224 F.2d 586
 Frank F. BISSON, Appellant,
v.
Brigadier General Francis E. HOWARD, Post Commander, and Colonel James E. Ligon, Commandant, Branch United States Disciplinary Barracks, Camp Gordon, Georgia, Appellees.
 No. 15457.
 United States Court of Appeals Fifth Circuit.
 June 30, 1955.
 
 Stanley M. Rosenblum, St. Louis, Mo., for appellant.
 William C. Calhoun, U. S. Atty., Augusta, Ga., Joseph J. F. Clark, Washington, D. C., for appellees.
 Before TUTTLE, CAMERON and JONES, Circuit Judges.
 TUTTLE, Circuit Judge.
 
 
 1
 This is an appeal by a former airman of the United States Air Force from a judgment of the District Court for the Southern District of Georgia dismissing his petition for writ of habeas corpus brought by him to challenge the validity of his detention under a sentence of dishonorable discharge, and six years' imprisonment adjudged by a general court martial.
 
 
 2
 Recognizing as he must the very limited field in which the civilian courts can review court martial proceedings,[1] appellant attacks the jurisdiction of the military court to try him.
 
 
 3
 The basis of this attack is the alleged failure of the military court to make an effective appointment of counsel for the proper conduct of his defense. This failure, he says, deprived him of the right guaranteed to every accused person by the Sixth Amendment to the Constitution to have the "Assistance of Counsel for his defense."
 
 
 4
 The petition here alleged that appellant, together with two other airmen, while stationed in England, were put on trial before a general court martial on a charge that they "acting jointly and in pursuance of a common intent did * * with force and violence and putting him in fear, steal from the presence of Cyril Cooper, against his will, an automobile"; that in the statements taken from the accused persons the others sought to place primary blame on appellant; that counsel was appointed to represent appellant one day before the preliminary hearing or investigation, and such appointed counsel and an assistant, both of whom were qualified as members of the bar of the highest court in one of the states, together with an individually selected counsel chosen by one of the other accused, represented the three men on their actual trial; that appointed counsel moved for a severance, asserting that the three defenses were antagonistic, but this motion was denied by the court; that petitioner was ignorant of his right to have separate counsel and did not waive such right; that after his conviction appellant made timely appeal to the Board of Review raising the issue of denial of counsel; the Board affirmed his conviction and sentence and he thereafter filed a timely petition for grant of review before the Court of Military Appeals,[2] which petition specifically raised the issue of denial of counsel, and this petition was denied; that the fact of antagonistic defenses prevented appellant from having any counsel at all as guaranteed him by the Constitution.
 
 
 5
 The Government filed its return and answer, including the entire record of the trial. The Government contended that the antagonistic defenses did not actually develop on the trial, that the refusal to sever was within the discretionary power of the court, and that appellant was ably and competently represented at every stage of the proceedings, including the perfecting of an appeal; that, moreover, the question whether a failure of the court to appoint separate counsel, if there was such failure, for joint defendants under the circumstances was a denial of a fundamental right is a question the military courts themselves should resolve; that they determined both on the review by the Board of Review[3] and by denial of the petition for review by the Court of Military Appeals that no prejudicial error had occurred, and the Government contends that such a determination, after full and fair consideration, is not reviewable by the district court.
 
 
 6
 There are here presented to us three important questions. The first is: Did the failure of the court martial sua sponte to appoint individual counsel for appellant in a case in which signed statements indicated there were antagonistic defenses and the convening authority had appointed two qualified military counsel for the three jointly accused defendants amount to a failure to make an effective appointment of counsel, which failure, if it occurred in a trial in a civilian rather than a military criminal court, would go to the jurisdiction of the court? The second is: If such a failure did occur would that have the same effect, i. e., to make void the court martial proceedings, as would such a failure in a criminal trial in a civilian court? The third is: If we find that the military courts themselves have given full and fair consideration to the first question, does the district court have the power to review their determination of that issue?
 
 
 7
 As to the first question, we start with the now well-recognized doctrine that if an accused is put on trial in a federal court without the assistance of counsel, or unless he has waived the right to counsel, the trial is void.[4] It is equally true that an accused in a trial before a state court enjoys the same protection.[5] Before passing to a consideration of the extent to which this same rule applies to courts martial, we should examine the case here presented to us to determine whether appellant made out a case of the kind that would bring him within the rule.
 
 
 8
 Appellant and two others were charged with a joint theft of a taxicab. Prior to the preferring of the charge they all signed confessions. These confessions were antagonistic and mutually self-exculpatory. However, on the trial the confessions were repudiated and the members of the court were instructed by the law member, at the instance of defense counsel, that no such statement could be considered as evidence against any other than the signer. Actually on the trial all defendants denied participation in the theft and no antagonistic defenses were developed. The record discloses that defense counsel vigorously and impartially represented all three defendants.
 
 
 9
 Under these circumstances it would seem far-fetched indeed, to conclude that there was such failure to appoint counsel as would bring the case within the ruling of the federal case of Johnson v. Zerbst, supra, or the state case of Powell v. State of Alabama, supra. If there was benefit to be derived from having individual counsel appointed, it became the duty of the lawyer already appointed and acting for appellant to make that request. There is not the slightest suggestion that appointed counsel were not highly competent and thoroughly honorable and conscientious. Their failure to ask for separate representatives for each of these accused men must thus be assumed to have stemmed from their professional judgment that it was better for appellant not to get into an antagonistic fight with his codefendants. It would be quite unthinkable for the district court now to hold that such failure resulted in "withholding from the * * * court, the power and authority to deprive an accused of his * * * liberty," such as occurs where there is a denial of assistance of counsel.
 
 
 10
 We hold then that there was no failure to provide counsel such as would deprive a criminal court, even under our civil jurisprudence, of jurisdiction to proceed to judgment and sentence.
 
 
 11
 The remaining two questions which we have posed need not, therefore, be answered. The temptation to attempt an answer to the second question is somewhat stronger than the ordinary temptation to express an opinion not directly required, because the subject is interesting, but it is not strong enough to cause us to do more than note the somewhat uncertain state of the law on the subject.
 
 
 12
 The Supreme Court said in Hiatt v. Brown, 339 U.S. 103, 70 S.Ct. 495, 498, 94 L.Ed. 691:
 
 
 13
 "It is well settled that `by habeas corpus the civil courts exercise no supervisory or correcting power over the proceedings of a court-martial * * *. The single inquiry, the test, is jurisdiction.' In re Grimley, 1890, 137 U.S. 147, 150, 11 S.Ct. 54, 34 L.Ed. 636. In this case the court-martial had jurisdiction of the person accused and the offense charged and acted within its lawful powers. The correction of any errors it may have committed is for the military authorities which are alone authorized to review its decision. In re Yamashita, 1946, 327 U.S. 1, 8-9, 66 S.Ct. 340, 344, 345, 90 L.Ed. 499; Swaim v. United States, supra, 165 U.S. [553] at page 562, 17 S.Ct. [448] at page 451, 41 L.Ed. 823."
 
 
 14
 The court did not say, but did it imply in the Brown case, that if an accused in a court martial who was admittedly a member of the armed forces, and thus clearly within the "jurisdiction," was on trial for an offense over which the Articles of War specifically give such courts "jurisdiction" without the elements of due process such as assistance of counsel, right to confrontation of witnesses or the like, such failure could not be made the subject of inquiry in the federal constitutional courts? This certainly is the view of Mr. Justice Minton, concurring specially in Burns v. Wilson, supra. In fact the majority opinion in the Burns case gives some weight to the suggestion when it says, 346 U.S. 137, at page 140, 73 S.Ct. 1045, at page 1047, 97 L.Ed. 1508:
 
 
 15
 "Military law, like state law, is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment. [Citing cases.] This Court has played no role in its development; we have exerted no supervisory power over the courts which enforce it; the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty, and the civil courts are not the agencies which must determine the precise balance to be struck in this adjustment. [Citing cases.] The framers expressly entrusted that task to Congress."
 
 
 16
 But, again the court said, 346 U.S. at pages 142, 143, 73 S.Ct. at page 1049:[6]
 
 
 17
 "For the constitutional guarantee of due process is meaningful enough, and sufficiently adaptable, to protect soldiers — as well as civilians — from the crude injustices of a trial so conducted that it becomes bent on fixing guilt by dispensing with rudimentary fairness rather than finding truth through adherence to those basic guarantees which have long been recognized and honored by the military courts as well as the civil courts."
 
 
 18
 It seems clear, as stated in the Burns opinion in the Circuit Court for the District of Columbia, that due process cannot be assumed to be the same "in a military setting as it is in a civil setting."[7] This stems, no doubt, in part from the understanding on all sides that the peculiar nature of the military function makes quite difficult the adherence to a well-defined line of demarcation between the strictly disciplinary and the judicial functions in the military services. It may also stem partly from the constitutional basis of the military courts.[8]
 
 
 19
 As to the third question, it is not clear whether the Supreme Court has now set down the rule that the military courts may with finality determine all constitutional questions of the sort here discussed, provided they undertake to decide such issues and give full and fair consideration to their resolution. As stated, it is not necessary for us to decide whether the determination by the military board of review that no prejudicial error voiding the trial resulted from the failure to appoint separate counsel would be binding on a district court. We only point again to the discussion of a somewhat similar subject in Burns v. Wilson, supra. The language there is probably broad enough to justify such a conclusion. However, the issues in that case were principally factual, and, as the appellant urges, findings and determinations on these factual situations and a decision as to their finality may be distinguishable.
 
 
 20
 One further comment may properly be made in connection with the relationships existing between the Congress, the system of military courts and the federal constitutional courts. As noted by Chief Justice Vinson in the Burns opinion, Congress has not been slow in keeping pace with changing concepts of justice as applied in the military field;[9] this fact also doubtless plays its part in the reluctance of the Supreme Court categorically to announce the exact limits within which each of the judicial systems is permitted to operate.
 
 
 21
 Finding, as we do, that the major premise on which appellant's case is posited, is not true, we find that the court below did not err in dismissing the petition and its judgment is
 
 
 22
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Hiatt v. Brown, 339 U.S. 103, 70 S.Ct. 495, 94 L.Ed. 691; Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508
 
 
 [2]
 A court of three civilian judges established under Art. 67 of the Uniform Code of Military Justice, 50 U.S.C.A. § 654. The judges are appointed by the President, by and with the advice and consent of the Senate for a term of fifteen years
 
 
 [3]
 In its opinion the Board of Review said:
 "As to the alleged erroneous action of the law officer in his denial of the defense's motion for severance presented at trial, we find that the asserted antagonistic defenses never materialized at trial. All three accused pleaded not guilty and protested their innocence by disclaiming any knowledge of any assault on the taxicab driver. Only in their pre-trial statements do any of the accused present concrete evidence that one of the accused, other than the author of the pre-trial statement, assaulted the victim. As the brief on behalf of accused Bisson so correctly points out, such statements cannot be considered by the court against any one other than the accused who made it, and the law officer herein so instructed the court at least three times during the trial. The ruling was correct and no prejudice appears as to any of the accused as a result of the joint trial conducted herein (citing cases). For the same reasons hereinabove expressed, no prejudice resulted from the failure to provide separate defense counsel for each accused. As a matter of fact the accused were represented by appointed defense counsel, assistant defense counsel, and a qualified counsel who was introduced as individual counsel for the accused Southart."
 
 
 [4]
 Johnson v. Zerbst, 304 U.S. 458, 463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461: "The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel."
 
 
 [5]
 Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158
 
 
 [6]
 The majority opinion was written by Chief Justice Vinson and concurred in by Justices Reed, Burton and Clark. Justice Jackson concurred in the result. Justice Minton concurred "in the affirmance of the judgment." Justice Frankfurter wrote a separate opinion favoring reargument of the case on the point here discussed; Justice Douglas dissented, writing an opinion in which Justice Black concurred
 
 
 [7]
 Burns v. Lovett, 91 U.S.App.D.C. 208, 202 F.2d 335, 352
 
 
 [8]
 U.S.Constitution, Art. I, § 8: "The Congress shall have Power * * * To make Rules for the Government and Regulation of the land and naval Forces."
 
 
 [9]
 "Only recently the Articles of War were completely revised, and thereafter, in conformity with its purpose to integrate the armed services, Congress established a Uniform Code of Military Justice applicable to all members of the military establishment. These enactments were prompted by a desire to meet objections and criticisms lodged against court-martial procedures in the aftermath of World War II. Nor was this a patchwork effort to plug loopholes in the old system of military justice. The revised Articles and the new Code are the result of painstaking study; they reflect an effort to reform and modernize the system — from top to bottom
 "Rigorous provisions guarantee a trial as free as possible from command influence, the right to prompt arraignment, the right to counsel of the accused's own choosing, and the right to secure witnesses and prepare an adequate defense. The revised Articles, and their successor — the new Code — also establish a hierarchy within the military establishment to review the convictions of courts-martial, to ferret out irregularities in the trial, and to enforce the procedural safeguards which Congress determined to guarantee to those in the Nation's armed services. And finally Congress has provided a special post-conviction remedy within the military establishment, apart from ordinary appellate review, whereby one convicted by a court-martial, may attack collaterally the judgment under which he stands convicted." Burns v. Wilson, 346 U.S. 137, at pages 140-141, 73 S.Ct. 1045, at page 1048.