496 F.2d 1001
 John BETONIE, USN, Petitioner-Appellee,
v.
Captain W. G. SIZEMORE, USN, Commanding Officer, Naval
Station, Jacksonville, Florida, et al.,
Respondents-Appellants.
Christopher P. TIMMONS, USN, Petitioner-Appellee,
v.
Captain CARRIER, USN, Commanding Officer, NATTC,
Jacksonville, Florida, Respondent-Appellant.
Phillip J. de LA TOVA, USN, Petitioner-Appellee,
v.
Captain CARRIER, USN, Commanding Officer, Naval Air
Technical Training Center, Jacksonville, Florida,
Respondent-Appellant.
Dennis Michael LYNCH, TM3, USN, Petitioner-Appellee,
v.
W. G. SIZEMORE, Captain, USN, Commanding Officer, Naval Air
Station, Jacksonville, et al., Respondents-Appellants.
 No. 73-3015.
 United States Court of Appeals, Fifth Circuit.
 July 5, 1974.
 
 Robert S. Yerkes, Asst. U.S. Atty., John L. Briggs, U.S. Atty., Jacksonville, Fla., Lieutenant Ralph B. Levy, JAGC, USNR Staff, Commander Fleet Air, Jacksonville, Fla., for respondents-appellants.
 Kathryn L. Powers, Jacksonville, Fla. (Court-appointed), in forma pauperis as to petitioners-appellees only.
 Before DYER and MORGAN, Circuit Judges, and KRAFT, District Judge.
 MORGAN, Circuit Judge:
 
 
 1
 The main question presented in these cases is whether the Sixth Amendment's guarantee of assistance of counsel protects enlisted military personnel brought before summary courts-martial in cases which may result in imprisonment. We hold that it does, and affirm the judgment of the district court granting writs of habeas corpus to the four petitioners.
 
 
 2
 Certain facts are common to all four cases. All petitioners are enlisted men in the United States Navy who were referred to summary courts-martial in the fall of 1972. All four consented to being tried by summary courts, and were found guilty and sentenced to terms of imprisonment at hard labor. The sentences were approved on review by the respective convening and supervisory authorities. None of the petitioners claims that the proper procedures of the Uniform Code of Military Justice (UCMJ) were not complied with in these cases. See, 10 U.S.C. 801 et seq.
 
 
 3
 John Betonie was found guilty of the offense of unauthorized absence after a plea of guilty, and was sentenced to 25 days confinenment at hard labor. Phillip J. de La Tova entered a plea of not guilty to a charge of possession of marihuana, but was found guilty and sentenced to 10 days confinement at hard labor. Christopher P. Timmons plead not guilty to two specifications of one charge of possession of marihuana. He was found not guilty of one specification and guilty of the other, and was sentenced to 10 days confinement at hard labor. Dennis Michael Lynch entered a plea of guilty to a charge of unauthorized absence and was sentenced to 25 days confinement at hard labor.
 
 
 4
 Each of the four men filed a petition for a writ of habeas corpus in the District Court for the Middle District of Florida before the end of his term of confinement, and the court granted all four petitions. In its order granting the petitions, the court made the following rulings:
 
 
 5
 (1) No commanding officer of officer-in-charge of a Navy or Marine Corps command or activity within this district shall refer any charge to a summary court-martial without an instruction that confinement may not be ordered thereunder unless the accused is:
 
 
 6
 (a) Advised of his right to counsel,
 
 
 7
 (b) Afforded an opportunity for counsel both prior to and during the summary court-martial proceeding,
 
 
 8
 (c) Advised that if indigent, counsel must be provided without cost, and
 
 
 9
 (d) After he has been so advised, the accused may execute a knowing and intelligent waiver of his right to counsel.
 
 
 10
 (2) The accused shall be afforded counsel having the qualifications of 10 U.S.C. 827(b) unless counsel having such qualifications cannot be obtained on account of physical conditions or military exigencies. If counsel having such qualifications cannot be obtained, the court shall state in writing the reasons therefor.
 
 
 11
 (3) If the summary court or trial counsel is qualified to act as counsel in a general court-martial, the defense counsel detailed by the convening authority must be similarly qualified.
 
 
 12
 (4) If the summary court or trial counsel is a commissioned officer, the defense counsel detailed by the convening authority must also be a commissioned officer of at least equal rank.
 
 
 13
 (5) No accused shall be denied the right to retain civilian legal counsel if he so requests unless military exigencies or physical conditions require such a denial. An accused is 'indigent' when, given his total financial situation by comparing assets and liabilities, he is unable to retain an attorney.
 
 
 14
 The court based its ruling on Argersinger v. Hamlin, 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972), which held that 'absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.'
 
 
 15
 The court ordered respondents either to retry petitioners under its guidelines, or to expunge petitioners' military records of the court-martial convictions, and in addition, to implement the guidelines of the opinion within 30 days of the date of the order. Respondents have reported to the court that they have complied with its order by expunging the records of the convictions and now conduct summary courts-martial in compliance with the order.
 
 
 16
 It will not be necessary for the purposes of this opinion to describe in detail the sometimes exceedingly complex intricacies of the UCMJ, but a simplified outline of the procedures will facilitate understanding of the issues involved. Military courts-martial have jurisdiction only over offenses made punishable by the UCMJ committed by members of a regular component of the armed forces (and certain others with intimate connections with the armed forces) when those offenses are 'service connected.' 10 U.S.C. 802, O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).
 
 
 17
 There are three types of court-martial. A general court-martial may try any person subject to the Code for any offense made punishable by it, and may impose any penalty not proscribed by the Code, including the death penalty. 10 U.S.C. 818. A special court-martial may try any person subject to the Code for any non-capital offense made punishable by the Code, and may prescribe any punishment not forbidden by the Code except 'death, dishonorable discharge, dismissal, confinement for more than six months, hard labor without confinement for more than three months, forfeiture of pay exceeding two-thirds pay per month, or forfeiture of pay for more than six months.' 10 U.S.C. 819. A summary court-martial consisting of one commissioned officer has jurisdiction over non-capital offenses committed by those subject to the Code, except officers, cadets, aviation cadets, and midshipmen. The maximum possible punishments in a summary court-martial are confinement for up to one month, hard labor without confinement for up to 45 days, restriction to specified limits for up to two months, or forfeiture of up to two thirds of one month's pay. 10 U.S.C. 820. In Article 15, 10 U.S.C. 815, the Code authorizes a commanding officer to impose non-judicial punishment for 'minor offenses' committed by members of his command. The punishments authorized by Article 15 are even more limited than those authorized for summary courts-martial. 10 U.S.C. 815.
 
 
 18
 At one end of the spectrum, the general court-martial embodies most of the attributes of a civilian criminal trial, although many commentators have criticized the differences that do exist. At the other end of the spectrum, the summary court consists merely of one officer who is authorized, even duty-bound, to protect both the prosecution and the defense, as well as acting as the judge and jury. There is, in effect, a trade-off between the severity of the sentence which may be imposed and the informality and speed permitted in the proceedings.
 
 
 19
 In light of this trade-off, it is important to note that no person may be subjected to either non-judicial punishment or summary court-martial unless he or she consents thereto. A person threatened with non-judicial punishment may request instead a summary court-martial, and a person threatened with a summary court-martial, even by reason of having refused Article 15 punishment, may demand instead a special court-martial. 10 U.S.C. 815(a), 820. By doing so, that person both gains the advantage of increased regularity of proceedings and procedural protection, and incurs the disadvantage of being subjected to greater potential maximum punishments.
 
 
 20
 One of the most important procedural variations among the different types of courts-martial is the presence or absence of counsel to represent the defendant. The UCMJ provides that the convening authority shall detail both trial counsel (i.e., a prosecutor) and defense counsel in all special and general courts-martial. 10 U.S.C. 827(a). However, the Code makes no mention of counsel in summary courts-martial or Article 15 proceedings, and it is clear that the Code does not require such counsel. The common practice has been not to allow the attendance of counsel at summary court proceedings and that practice was followed in these cases, even though at least two of the petitioners here specifically requested such counsel.
 
 
 21
 The first question, as always, is: Did the district court have jurisdiction conferred by a statute to issue the writs? Ex parte Bollman, 8 U.S. (4 Cranch) 75, 2 L.Ed. 554 (1807). The answer is that the court did have jurisdiction under the general habeas corpus statute, 28 U.S.C. 2241. The petitioners are questioning the validity of the judgments which led to their confinement, alleging that the military proceedings leading to their sentences were fatally defective because they were deprived of the basic constitutional guarantee of assistance of counsel. See, Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1920).
 
 
 22
 Although it has traditionally been thought that the only questions open to consideration by a federal court on an application for a writ of habeas corpus from a military prisoner were jurisdictional, Hiatt v. Brown, 339 U.S. 103, 70 S.Ct. 495, 94 L.Ed. 691 (1950); United States v. Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890), the scope of review has been considerably broadened. Burns v. Wilson, 346 U.S. 137, 139, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); United States ex rel. Innes v. Hiatt, 141 F.2d 664, 666 (3rd Cir. 1944). See, Thomas v. Davis, 249 F.2d 323 (10th Cir. 1957). It is now clear that civilian courts have jurisdiction to review a petitioner's claim that he is imprisoned in violation of his basic constitutional rights.
 
 
 23
 In addition, the fact that petitioners have served their sentences and have been released from confinement does not affect their right to challenge the allegedly illegal sentences. Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1948).
 
 
 24
 At trial, the government argued that the petitions should be dismissed because petitioners had failed to exhaust remedies available to them within the military system. The district court correctly held that 'no other judicial appellate tribunals established to hear appeals in court-martial cases are available to these petitioners to which they could present their serious constitutional claim as a matter of right under the Uniform Code of Military Justice. 10 U.S.C. 866, 867.' To the argument that petitioners should have been required to seek extraordinary administrative remedies before asking a federal court for relief, the court correctly responded, 'such relief is too remote and speculative when considered in the face of the substantial constitutional claim herein presented,' citing Noyd v. Bond, 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969), and Cole v. Laird, 468 F.2d 829 (5th Cir. 1972).
 
 
 25
 The government also argued at trial that petitioners had waived their right to counsel, either by pleading guilty or by failing to demand a special court-martial. However, these issues have apparently been abandoned on appeal. In any case, we think that reliance on these arguments would be futile. See, United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968); Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945).
 
 
 26
 We come now to the heart of the matter: Does there exist a right to counsel in summary court-martial proceedings which result in imprisonment? It is clear that if such a right exists, it is grounded in either the Fifth or Sixth Amendments to the Constitution, since the UCMJ provides for no such right.
 
 The Fifth Amendment provides:
 
 27
 No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.
 
 
 28
 It is obvious that the military exception clause in the amendment limits the right to a grand jury. Kahn v. Anderson, 255 U.S. 1, 41 S.Ct. 224, 65 L.Ed. 469 (1921). However, normal rules of construction would indicate that the military exception does not apply to the rest of the amendment, and a simple reading of the sentence using ordinary rules of grammar and punctuation supports this view. For example, it has been held that the protection against double jeopardy does apply to military proceedings. Sanford v. Robbins, 115 F.2d 435 (5th Cir. 1940), cert. den., 312 U.S. 697, 61 S.Ct. 737, 85 L.Ed. 1132 (1941). See, Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949).
 
 
 29
 It is true that some early cases can be cited for the proposition that military personnel have no constitutional rights whatsoever. Whatever validity this view may have had in the past, it has been true for at least two decades that military personnel are entitled to some form of due process. As the Supreme Court held in Burns v. Wilson, supra,
 
 
 30
 The constitutional guarantee of due process is meaningful enough, and sufficiently adaptable, to protect soldiers-- as well as civilians-- from the crude injustices of a trial so conducted that it becomes bent on fixing guilt by dispensing with rudimentary fairness rather than finding truth through adherence to those basic guarantees which have long been recognized and honored by the military courts as well as the civil courts. 346 U.S. at 142-143.
 
 
 31
 See also, Gallagher v. Quinn, 124 U.S.App.D.C. 172, 363 F.2d 301, cert. den., 385 U.S. 881, 87 S.Ct. 167, 17 L.Ed.2d 108 (1966); McCurdy v. Zuckert, 359 F.2d 491 (5th Cir.), cert. den., 385 U.S. 903, 87 S.Ct. 212, 17 L.Ed.2d 133 (1966). Cf., Gibbs v. Blackwell, 354 F.2d 469 (5th Cir. 1965); Shapiro v. United States, 107 Ct.Cl. 650, 69 F.Supp. 205 (1947); United States ex rel. Innes v. Hiatt, supra at 664.
 
 
 32
 The requirements of due process may not be precisely the same in a military setting as they would be in a comparable civilian setting. Gallagher v. Quinn, supra; Bisson v. Howard, 224 F.2d 586 (5th Cir.), cert. den., 350 U.S. 916, 76 S.Ct. 201, 100 L.Ed. 803 (1955). Nevertheless, the due process clause of the Fifth Amendment does provide some protection to those in the military, and it is necessary to determine whether the procedure used by the Navy in these cases passes constitutional muster.
 
 
 33
 Petitioners also allege that the summary courts-martial in question violated their rights under the Sixth Amendment. That amendment provides:
 
 
 34
 In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the Assistance of Counsel for his defence.
 
 
 35
 The major problem in interpreting this amendment is that, although there is no military exception, as there is in the Fifth Amendment, it is accepted that the right to a jury trial does not apply to courts-martial, and never has. See, e.g., United States v. Brown, 7 U.S.C.M.A. 251 C.M.R. 41 (1956). The status of other Sixth Amendment rights in military proceedings has been much debated, and even the traditional meaning of the amendment is not clear. For example, compare Henderson, Courts-Martial and the Constitution: The Original Understanding, 71 Harv.L.Rev. 293, 304 (1957), with Weiner, Courts-Martial and the Bill of Rights: The Original Practice I, 72 Harv.L.Rev. 1 (1958). Some courts have held that the Sisth Amendment does not protect defendants in courts-martial. Daigle v. Warner, 490 F.2d 358 (9th Cir. 1974); LeBallister v. Warden, 247 F.Supp. 349 (D.Kan.1965). But the weight of authority seems to be strongly in favor of the proposition that, although the perameters of the rule may not be identical to those in civilian proceedings, there is a right to counsel in courts-martial. Smith v. McNamara, 395 F.2d 896 (10th Cir. 1968), cert. den., 394 U.S. 934, 89 S.Ct. 1211, 22 L.Ed.2d 466 (1969); Kennedy v. Commandant, 377 F.2d 339 (10th Cir. 1967); Henry v. Warner, 357 F.Supp. 495 (C.D.Cal.1973); Application of Stapley, 246 F.Supp. 316 (D. Utah 1965); Denton v. United States, 144 Ct.Cl. 840, 863, cert. den., 361 U.S. 821, 80 S.Ct. 70, 4 L.Ed.2d 68 (1959); Gallagher v. United States, 191 Ct.Cl. 546, 423 F.2d 1371, cert. den., 400 U.S. 849, 91 S.Ct. 58, 27 L.Ed.2d 86 (1970); Shapiro v. United States, supra; United States v. Culp, 14 U.S.C.M.A. 199, 33 C.M.R. 411 (1963); United States v. Alderman, 22 U.S.C.M.A. 298, 46 C.M.R. 298 (1973).
 
 
 36
 We find the differences between courts-martial and civilian criminal trials to be much less significant than the similarities between the two types of proceedings, at least with respect to the Sixth Amendment. Both types of proceedings may lead to deprivations of liberty as well as property. Both generate potentially severe social stigma. Both have significant repercussions far beyond their immediate impact, in particular in the area of future employment. We have been pointed to no convincing reason why Argersinger v. Hamlin, supra, with its rejection of the distinction between petty and serious crimes, should not establish the framework for Sixth Amendment analysis of military proceedings.
 
 
 37
 Particularly significant is the fact that both the Army and the Air Force have already begun to apply Argersinger in all court-martial proceedings. See, Daigle v. Warner, 348 F.Supp. 1074 (D.Haw.1972), rev'd., Daigle v. Warner, supra. The Navy, however, argues that it should not be compelled to abide by the Argersinger decision.
 
 
 38
 Counsel for appellants argues that because the penalties imposed by a summary court-martial are minor, counsel should not be required. Nevertheless, imprisonment is a possibility, as these cases demonstrate, and Argersinger holds that in all such cases, counsel is required. The Navy also argues that imprisonment is not as much of a burden for military personnel as it is for civilians. However, it defies common sense to think that incarceration in a military prison is not a sufficiently serious punishment to require the presence of counsel.
 
 
 39
 Appellants further argue that defendants in courts-martial do not need counsel because they are thoroughly versed in the applicable law by reason of their military training, and, in addition, that most offenses tried before courts-martial are purely military, and the applicable law is much less complex than civilian law. However, this court notes that there have been many disputes about the meaning of the various provisions of the Uniform Code of Military Justice, both procedurally and substantively, and that an accused confronted with this unique system of justice is likely to need counsel as much, if not more, than his civilian counterpart. The Navy presents other arguments in an attempt to distinguish military from civilian criminal justice, but we find all of these attempted distinctions unconvincing. The fact remains that an accused entering into a court-martial faces potentially serious punishments of the type which Argersinger holds may not be imposed unless the accused has the assistance of counsel. We thus conclude that both the Fifth and Sixth Amendments require counsel in any court-martial proceeding in which incarceration is to be imposed as a punishment.
 
 
 40
 Having decided that the Fifth and Sixth Amendments require the presence of counsel in summary courts-martial which result in imprisonment, we now must face the question of whether the right to counsel was violated in the proceedings herein. It is undisputed that two of the petitioners asked for and were refused counsel, and the other two were not advised to their right to counsel, and would have been refused counsel had they requested it. Nevertheless, the Navy argues that the fact that the summary court officer is charged with the duty of representing both the prosecution and the defendant fulfills the requirements of the right to counsel. This argument is, to say the least, unconvincing. An advocate may not properly fulfill his responsibility to defend a person accused of a crime and represent the prosecution at the same time. The potential conflicts of interest in such a situation are legion. The accused in a summary court-martial is entitled to the assistance of his own counsel, and that counsel may not be charged with the duty of representing an adversary party in the same proceeding. See, Henry v. Warner, supra at 504; In re Gault, 387 U.S. 1, 34-42, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Thus, we conclude that petitioners' right to counsel was violated by the convictions in these cases.
 
 
 41
 We come now to the question of remedy. Appellants argue that because it is only the imposition of incarceration which brings into play the requirements of Argersinger, supra, the district court should not have required appellants to either retry appellees under its guidelines or expunge appellees' records of the results of these courts-martial. However, in that appellees had already served the sentences imposed by the courts-martial, we can see no alternative to the remedy ordered by the district court, and conclude that the court properly issued the requested writs.
 
 
 42
 Appellants also argue that the court improperly required them to carry out its guidelines, supra, in all summary courts-martial. On this point, we agree with appellants. This suit was not a class action, and we can find no justification for the broad-based order of the district court establishing a procedural framework for all summary courts-martial. This case was simply one involving four petitioners and their courts-martial. There is no indication what role, if any, military necessity might play in future actions of this kind, since there was not even any allegation that any peculiar or difficult military circumstances existed in these cases. Neither was there any question of what kind of counsel would suffice to fulfill the requirements of the Fifth and Sixth Amendments. See, Argersinger, supra (Powell, J., concurring); United States v. Culp, supra. That is, the district court was not called upon to decide whether, or under what circumstances legally trained counsel would be required, or whether defense counsel must meet precisely the same standards as any prosecution counsel participating in the court-martial proceedings. Therefore, although the district court properly granted the petitions for writs of habeas corpus in the cases of the four petitioners, we hold that the mandatory guidelines of the district court are not supported by the record in this case, and must be vacated.
 
 
 43
 Affirmed in part, reversed and remanded in part.