Alvin W. DODSON, Jr.,
Petitioner–Appellant,

v.

Colonel Gordon N. ZELEZ, Commandant, Respondent–Appellee.

No. 88–2875.

United States Court of Appeals,
Tenth Circuit.

Oct. 23, 1990.

Kathleen J. Purcell of Remcho, Johansen & Purcell, San Francisco, Cal. (Joseph Remcho and Martin Buchanan of Remcho, Johansen & Purcell, San Francisco, Cal., and David J. Waxse of Shook, Hardy & Bacon, Overland Park, Kan., with her on the briefs), for petitioner-appellant.

Robert C. Barber, Captain, U.S. Marine Corp, Office of Judge Advocate General, Alexandria, Va. (Benjamin L. Burgess, Jr., U.S. Atty., and Alleen S. Castellani, Asst. U.S. Atty., D. Kan., on the brief), for respondent-appellee.

Before McKAY, ANDERSON and EBEL, Circuit Judges.

McKAY, Circuit Judge.

This case involves a military prisoner's petition for habeas corpus that was denied by the district court.

## I. Facts

Defendant was one of three marines charged with attempted robbery, conspiracy to rob, premeditated murder, felony murder, and robbery in connection with events occurring on May 31, 1981 and June 1, 1981. Defendant's case was initially set to be heard on September 1, 1981. How- ever, due to continuances sought by the government, defendant's court-martial did not take place until December 11, 1981. The court-martial convicted defendant on all charges by a two-thirds vote. A conviction of premeditated murder or felony murder carries a mandatory sentence of death or life imprisonment. Defendant was sentenced to life imprisonment when the court-martial did not unanimously vote for death. The military judge did not require three-fourths of the court-martial to concur in the life sentence.

The convening authority approved the findings and sentence of the court-martial. Defendant then presented seven allegations of error to the Navy–Marine Corps Court of Military Review. Defendant repeats four of those claims of error here. Defendant now claims: One, that the voting procedure of the court-martial violated due process; two, that the composition of the court-martial combined with the voting procedures violated due process; three, that he was denied a speedy trial; and four, that exclusion of expert witness testimony violated due process. The Court of Military Review found no error in the proceedings, after specifically reviewing defendant's claims regarding speedy trial and exclusion of expert witness testimony. The court summarily denied defendant's claims regarding the three-fourths voting procedures and the composition of the jury. *See United States v. Dodson,* 16 M.J. 921 (N.M.C.M.R.1983). The United States Court of Military Appeals then affirmed the conviction. *See United States v. Dodson,* 21 M.J. 237 (C.M.A.1986), *on rehearing,* 22 M.J. 257 (C.M.A.1986). The United States Supreme Court denied certiorari on December 8, 1986. *See Dodson v. United States,* 479 U.S. 1006, 107 S.Ct. 644, 93 L.Ed.2d 701 (1986).

On June 30, 1987, defendant filed a petition for a writ of habeas corpus in the district court. After fully reviewing the voting procedures claim and refusing to review the other three suggestions of error, the district court denied the writ. 702 F.Supp. 267. Defendant now appeals the denial of the writ to this court.

## II. Federal Court Review of Military Courts-Martial

When reviewing military courts-martial on habeas corpus grounds, the Supreme Court historically simply looked to see if the court-martial had jurisdiction. *See Ex parte Reed*, 100 U.S. 13, 23, 25 L.Ed. 538 (1879). *See also Collins v. McDonald*, 258 U.S. 416, 418, 42 S.Ct. 326, 327, 66 L.Ed. 692 (1922); *McClaughry v. Deming*, 186 U.S. 49, 69, 22 S.Ct. 786, 794, 46 L.Ed. 1049 (1902); *Johnson v. Sayre*, 158 U.S. 109, 117, 15 S.Ct. 773, 776, 39 L.Ed. 914 (1895). Over time the Court began to look more carefully at the merits of the claims while still calling its review a search for jurisdiction. *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Finally, in *Burns v. Wilson*, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953), the Supreme Court noted that Congress had given the federal courts the power to review courts-martial on habeas corpus applications. *Burns v. Wilson*, 346 U.S. 137, 139, 73 S.Ct. 1045, 1047, 97 L.Ed. 1508 (1957). The *Burns* Court then explained the limitations on federal court review of military habeas corpus cases. "[T]hese provisions do mean that when a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." *Burns*, 346 U.S. at 142, 73 S.Ct. at 1049. The Court went on to state that "[i]t is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims." *Id.* at 144, 73 S.Ct. at 1050.

The federal courts' interpretation—particularly this court's interpretation—of the language in *Burns* has been anything but clear. Probably a majority of our cases have simply quoted the *Burns* language and held that no review of a petition for habeas corpus was possible when the defendant's claims were fully and fairly considered by the military courts. *See Watson v. McCotter*, 782 F.2d 143, 144 (10th Cir.), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986); *King v. Moseley*, 430 F.2d 732, 734 (10th Cir.1970); *Bennett v. Davis*, 267 F.2d 15, 17 (10th Cir.

1959); *Dickenson v. Davis*, 245 F.2d 317, 320 (10th Cir.1957), *cert. denied*, 355 U.S. 918, 78 S.Ct. 349, 2 L.Ed.2d 278 (1958); *Easley v. Hunter*, 209 F.2d 483, 486–87 (10th Cir.1953). A few of our cases were more specific and held that we could not review *factual disputes* if they had been fully and fairly considered by the military courts. *See Kennedy v. Commandant, United States Disciplinary Barracks*, 377 F.2d 339, 342 (10th Cir.1967); *Mendrano v. Smith*, 797 F.2d 1538, 1542 n. 6 (10th Cir. 1986). Still other of our cases have held that review of constitutional claims in habeas corpus petitions was proper without really saying when and why. *See Wallis v. O'Kier*, 491 F.2d 1323, 1325 (10th Cir.), *cert. denied*, 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974); *Day v. Davis*, 235 F.2d 379, 384 (10th Cir.), *cert. denied*, 352 U.S. 881, 77 S.Ct. 104, 1 L.Ed.2d 81 (1956). Another of our recent cases held that review was proper when the constitutional claim was both "substantial and largely free of factual questions." *Monk v. Zelez*, 901 F.2d 885, 888 (10th Cir.1990) (quoting *Mendrano*, 797 F.2d at 1542 n. 6). *See also Lundy v. Zelez*, 908 F.2d 593 (10th Cir. 1990).

■ Apparently because of the confusing state of our cases, the district court looked to a Fifth Circuit case for guidance in determining when to review a claim made in a habeas corpus petition. *See Calley v. Callaway*, 519 F.2d 184 (5th Cir. 1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976). We agree that the *Calley* case identifies four factors— also found in our prior cases, although not so clearly expressed—helpful in determining whether review of a military conviction on habeas corpus is appropriate. The four factors from *Calley* and the Tenth Circuit cases articulating the same principles are:

1. *The asserted error must be of substantial constitutional dimension....* [*See Mendrano*, 797 F.2d at 1542 n. 6.]
2. *The issue must be one of law rather than of disputed fact already determined by the military tribunals....* [*See Mendrano*, 797 F.2d at 1542 n. 6.]
3. *Military considerations may war-*

*rant different treatment of constitu-
tional claims....* [*See Dickenson v.
Davis,* 245 F.2d 317, 320 (10th Cir.1957)]
4. *The military courts must give ade-
quate consideration to the issues in-
volved and apply proper legal stan-
dards.* [*See King v. Moseley,* 430 F.2d
732, 734–35 (10th Cir.1970); *Watson v.
McCotter,* 782 F.2d 143, 145 (10th Cir.
1986).]

*Calley,* 519 F.2d at 199–203. We recognize
that these factors still place a large amount
of discretion in the hands of the federal
courts. Nevertheless, we believe that they
provide a concise statement of the factors
normally relied on by the federal courts in
deciding whether to review military habeas
corpus petitions. Applying these four
factors to the four claims asserted by de-
fendant, we hold that only the voting proce-
dures claim is subject to our review. We
hold that the remaining claims were fully
and fairly reviewed by the military courts.

A. Voting Procedures

We affirm the district court's decision to
review defendant's claim that the voting
procedures used at his court-martial violat-
ed due process. This claim involves a sub-
stantial constitutional issue, that defendant
was incarcerated without due process of
law. In addition, in its brief the govern-
ment conceded that this issue was one of
law rather than of disputed fact. There is
no contention that unique military consider-
ations apply to this issue. Finally, al-
though this issue was raised before the
military courts of review, it was summarily
affirmed without discussion. This factor
alone is not sufficient to justify our review
of this issue. *See Watson v. McCotter,* 782
F.2d 143, 145 (10th Cir.), *cert. denied,* 476
U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549
(1986). However, when the military courts'
summary affirmance is considered with the
other three factors in *Calley,* we hold that
this claim fulfills the four requirements for
our review.

B. Jury Composition

We hold that defendant's jury composi-
tion claim was fully and fairly considered
by the military courts. Defendant points
to seven court-martial procedures followed
in this case which he claims denied him due
process of law in the totality of the circum-
stances. Three of these procedures involve
the voting procedures that we have already
agreed to review above. The remaining
four claims deal only with the composition
of the court-martial. Defendant seeks to
apply Supreme Court requirements con-
cerning civilian juries to his court-martial.
Defendant's suggestion has been squarely
rejected by the Supreme Court itself.

Petitioner can gain no support from the
analogy of trial by jury in the civil
courts. The right to trial by jury guar-
anteed by the Sixth Amendment is not
applicable to trials by courts-martial or
military commissions. Courts-martial
have been composed of officers both be-
fore and after the adoption of the Consti-
tution. The constitution of courts-mar-
tial, like other matters relating to their
organization and administration, is a
matter appropriate for congressional ac-
tion.

*Whelchel v. McDonald,* 340 U.S. 122, 126–
27, 71 S.Ct. 146, 149, 95 L.Ed. 141 (1950)
(citations and footnotes omitted).

▇ We have been consistent in refusing
to apply the sixth amendment right to a
jury trial in the court-martial setting. *See
Mendrano,* 797 F.2d at 1544; *King,* 430
F.2d at 734; *De War v. Hunter,* 170 F.2d
993, 997 (10th Cir.1948), *cert. denied,* 337
U.S. 908, 69 S.Ct. 1048, 93 L.Ed. 1720
(1949) (footnote omitted) ("The right of tri-
al by jury guaranteed by the 6th Amend-
ment to the Constitution of the United
States is not applicable in a trial by military
court-martial. Hence, decisions respecting
the right to trial by one's peers in civil
courts are inapplicable."). Other federal
courts have also refused to apply the con-
stitutional right to a jury trial to court-mar-
tial proceedings. *See Betonie v. Sizemore,*
496 F.2d 1001, 1007 (5th Cir.1974); *Daigle
v. Warner,* 490 F.2d 358, 364 (9th Cir.1974);
*Stanford v. United States,* 413 F.2d 1048,
1049 (5th Cir.1969); *Wright v. Markley,*
351 F.2d 592, 593 (7th Cir.1965).

Clearly, defendant makes no substantial
constitutional claim regarding court-martial

composition under the sixth amendment jury cases. In addition, in light of the Supreme Court's explicit statement that court-martial composition is a matter for Congress, we hold that defendant makes no substantial constitutional claim that due process was violated. Defendant points to no specific instance in which his court-martial denied him due process rights merely because of its composition. Therefore, we hold that the Court of Military Appeals' summary affirmance was appropriate on this issue and fulfilled the full and fair consideration requirement. We affirm the district court's refusal to review the jury composition issue.

## C. Speedy Trial

■ We next hold that defendant's speedy trial claim was fully and fairly considered by the military courts. Although this claim presents a substantial constitutional issue, we hold that it is not open to our review because it is essentially a factual question and was fully and fairly considered by the military courts. The speedy trial issue was tried on stipulated facts. However, the essential question for the court to answer was whether the reasons given by the government were sufficient to justify the delay in defendant's trial. This is a factual question, and if we granted review it would require us to merely reevaluate the evidence. *Burns* clearly prohibits this type of review. "[W]hen a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." *Burns*, 346 U.S. at 142, 73 S.Ct. at 1049. This issue was also carefully considered by the Court of Military Review in a lengthy discussion, and it was summarily affirmed by the Court of Military Appeals. We hold that defendant's speedy trial claim was fully and fairly considered by the military courts, and we affirm the district court's refusal to review the issue.

## D. Expert Testimony

Finally, we hold that defendant's claim concerning the exclusion of expert testimony was also fully and fairly considered by the military courts. This claim raises a substantial constitutional issue of due process. However, we believe that it was a factual issue fully considered by the military courts. The question of whether the expert testimony would be based on findings generally accepted in the scientific community was a factual question to be determined by weighing the evidence presented at trial. Again, the *Burns* case does not allow us to reweigh the evidence. The Court of Military Review specifically dealt with this issue in its opinion. Thus, we believe that this issue was fully and fairly considered by the military courts, and we affirm the district court's refusal to review the issue.

## III. *Teague v. Lane*

■ The next threshold issue we must face is whether the relief sought by plaintiff would create a new rule in violation of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). A plurality of the Supreme Court created what ironically could be considered a new rule in *Teague* when it held that federal court habeas corpus review of state court decisions could not create new constitutional rules of criminal procedure. *Teague*, 109 S.Ct. at 1075. The *Teague* Court defined a "new rule" as one that "breaks new ground or imposes a new obligation on the States or the Federal Government.... To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 109 S.Ct. at 1070. Supreme Court interpretation of *Teague* continues to set a very high standard for holding that a court ruling is not "new." In *Sawyer v. Smith*, —— U.S. ——, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990), the Court held that prior decisions that inform, or even control or govern, the analysis of a claim do not necessarily compel the rule that the petitioner sought. *Id.* 110 S.Ct. at 2828. The Court held that in order to create a new rule prior cases must "compel" the rule sought by a petitioner. *Id.*

In spite of the high standard set up by the Supreme Court for holding that a requested rule is not a new rule, we are firmly convinced that the relief sought by plaintiff in this case concerning the three-fourths voting requirement for sentencing does not require the creation of a new rule. As we discuss in section V.B., the requirement of three-fourths concurrence in a life sentence—even if mandatory—is "compelled" and "dictated" by prior precedent and statutory law.[1] In light of this conclusion, we proceed to the merits of plaintiff's claims on the voting procedures issue.

## IV.  Standard of Review

The district court's interpretation of the Constitution, statutes, or regulations is subject to de novo review. *In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir.1988). In conducting a de novo review, we make an independent determination of the issues, giving no special weight to the district court's determination. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir.1988).

## V.  Court–Martial Voting Procedures

Defendant makes four separate arguments challenging the voting procedures used in this case. Defendant first claims that requiring only two-thirds of the court-martial to vote for conviction violates due process. Second, defendant claims that the court-martial violated due process by failing to require a three-fourths vote to sentence him to life imprisonment. Third, defendant claims that the lack of a three-fourths vote denied him equal protection. Finally, defendant claims that existing Supreme Court civilian jury cases do not allow a conviction by five members of a seven member "jury."

### A.  Two-thirds Vote for Conviction

Defendant's first argument that a two-thirds vote for conviction violates due process is based on a belief that three-fourths of the court-martial must vote to convict for a crime with a mandatory life sentence. Defendant bases his argument on the fact that the Uniform Code of Military Justice requires a three-fourths vote to impose any sentence over ten years. "No person may be sentenced to life imprisonment or to confinement for more than ten years, except by the concurrence of three-fourths of the members present at the time the vote is taken." 10 U.S.C. § 852(b)(2) (1988). Defendant argues that because his life sentence was mandatory, he was entitled to a three-fourths vote on his conviction.

Although defendant's suggested requirement might be a sensible solution to a possible statutory inconsistency, we are constrained by the explicit language of the statute. The statute requires only a two-thirds vote to convict for any crime for which the death penalty is not mandatory. "No person may be convicted of any [crime for which the death penalty is not mandatory], except ... by the concurrence of two-thirds of the members present at the time the vote is taken." 10 U.S.C. § 852(a)(2) (1988).[2] Thus, *conviction* for a crime with a mandatory life sentence requires only a two-thirds vote, regardless of any requirements imposed by the *sentencing* statute. Sentencing and conviction are separate acts, based on separate facts and issues. "These [conviction and sentencing] provisions of the Code are plain and clear, and set out the number of votes required to convict and to sentence under different subsections. This is appropriate, for findings and sentence are separate functions, a court-martial being unique in that the court members perform both." *United States v. Walker*, 7 C.M.A. 669, 23 C.M.R. 133, 137

---

1. Because we can so easily conclude that the rule we announce in this case is not a violation of *Teague*, we have not fully considered whether *Teague* is applicable to the review of military courts. We express no opinion on that issue.

2. The 1969 Manual for Courts–Martial—in use when defendant was tried and sentenced—contains nearly identical instructions for conviction by a two-thirds vote. Manual for Courts–Martial, United States, 1969, ¶ 74d(3) at 13–6 (Rev. ed. 1969). *See also* Manual for Courts–Martial, United States, 1984, R.C.M. 921(c)(2)(B) at II–137 (1984).

(1957). *See also Stout v. Hancock*, 146 F.2d 741, 744 (4th Cir.), *cert. denied*, 325 U.S. 850, 65 S.Ct. 1086, 89 L.Ed. 1971 (1944); *In re Campo*, 71 F.Supp. 543, 545 (S.D.N.Y.1947), *aff'd*, 165 F.2d 213 (2nd Cir.1947); *Hurse v. Caffey*, 59 F.Supp. 363, 365 (N.D.Tex.1945).

This court has specifically upheld the two-thirds requirement necessary for conviction on at least two previous occasions. In *Mendrano v. Smith*, 797 F.2d 1538 (10th Cir.1986), we considered a due process challenge to the two-thirds requirement. "[W]e conclude that the two-thirds rule of Article 52 satisfies the requirements of due process in this case." *Mendrano*, 797 F.2d at 1544. In an earlier case we concluded that where "the charge is murder and the sentence is life imprisonment ... it is sufficient if two-thirds or more of the members of the court concur in the conviction...." *Anderson v. Hunter*, 177 F.2d 770, 771 (10th Cir.1949).

We recognize the inconsistency created by a statute that requires a two-thirds vote to convict for a crime carrying a mandatory life sentence and that also requires a three-fourths vote to sentence an individual to life imprisonment. Indeed, we believe that a sensible statutory scheme would require the same percentage vote for conviction and sentence where the sentence is mandatory.[3] Unfortunately, we do not have the power to rewrite the statute. Only Congress can change the existing voting requirements.

> Merely because we might believe that consistent percentages would be desirable does not clothe us with power to change the statute to make them correspond. While criminal statutes covering the same general subject should be construed so as to make them harmonize, courts are not legislative bodies and that canon of statutory construction cannot be employed to construe an act contrary to a clearly expressed Congressional intent.

*Walker*, 23 C.M.R. at 138. Thus, the conviction by the court-martial requiring only a two-thirds concurrence is affirmed. Such a vote does not violate due process.

**B. Three-fourths Vote for Sentencing**

■ Defendant next claims that no three-fourths vote was taken on his sentence and that the statute requires a three-fourths vote, even on mandatory sentences. The government's response that a three-fourths vote for a mandatory sentence is unnecessary appears logical at first glance. However, when we consider that the military court could refuse to impose any sentence if the required number of votes are not cast, we then understand why a separate vote is necessary for sentencing even in mandatory sentence cases.

Section 852(b)(2) contains a blanket requirement of a three-fourths vote for any sentence over ten years. "No person may be sentenced to life imprisonment or to confinement for more than ten years, except by the concurrence of three-fourths of the members present at the time the vote is taken." 10 U.S.C. § 852(b)(2) (1988). There is no exception to section 852(b)(2) for mandatory sentences. Nevertheless, any ambiguity in the Uniform Code of Military Justice created by the Code's requirement of a mandatory life sentence for defendant must be resolved in favor of the accused. *See Jackson v. Taylor*, 353 U.S. 569, 576, 77 S.Ct. 1027, 1031, 1 L.Ed.2d 1045 (1957). In this case, we must resolve any ambiguity in favor of the accused by requiring a three-fourths vote on even a mandatory sentence.

Strong additional authority for requiring a three-fourths vote on a mandatory sentence, and a source helpful in resolving any ambiguity in the Code, is the 1969 Manual for Courts–Martial in effect during defendant's court-martial. The 1969 Manual for Courts–Martial specifically required a vote on sentencing, even in cases with mandatory sentences.

> It is the duty of each member to vote for a proper sentence for the offense or offenses of which the accused has been found guilty, without regard to his opin-

---

3. The statute currently requires a unanimous vote both to convict and to sentence for crimes that carry a mandatory death penalty. *See* 10 U.S.C. § 852(a)(1) and (b)(1) (1988).

ion or vote as to the guilt or innocence of the accused. *Any sentence, even in a case where the punishment is mandatory, must have the concurrence of the required number of members. . . .* No person may be sentenced to life imprisonment or to confinement for more than ten years, except by the concurrence of three-fourths of the members present at the time the vote is taken.

*Manual for Courts–Martial, United States, 1969,* ¶ 76b(2) at 13–14 (Rev. ed. 1969) (emphasis added).[4] The Manual for Courts–Martial is written by the President of the United States under authority granted to the President by the Uniform Code of Military Justice.

> Pretrial, trial, and post-trial procedures, including modes of proof, for cases arising under this chapter triable in courts-martial, military commissions and other military tribunals, and procedures for courts of inquiry, may be prescribed by the President by regulations which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter.

10 U.S.C. § 836(a) (1988). Thus, the President may prescribe rules as long as they are not inconsistent with the Uniform Code. The rule promulgated in Manual paragraph 76b(2) is not inconsistent with the Code. At worst the rule clarifies an existing ambiguity.

We must emphasize that the Manual for Courts–Martial has the force of statutory law. This court has affirmed a district court within our circuit that held the Manual for Courts–Martial to have the force of statutory law. "Congress, by enacting Article 36, UCMJ (10 U.S.C.A. § 836), granted to the President the power to prescribe rules for the military courts. Pursuant to

this authority, the President by executive order prescribed the Manual for Courts–Martial (MCM) *which has the force of statutory law." Levy v. Dillon,* 286 F.Supp. 593, 596 (D.Kan.1968), *aff'd,* 415 F.2d 1263 (10th Cir.1969) (emphasis added). *See also Harper v. Jones,* 195 F.2d 705, 707 (10th Cir.1952) ("The President is authorized to make and publish regulations for the government of the army which shall be enforced and obeyed until altered or revoked by the same authority."); *Billings v. Truesdell,* 321 U.S. 542, 551, 64 S.Ct. 737, 743, 88 L.Ed. 917 (1944) (War Department regulations have the force of law). The Manual—which has the force of law—specifically requires a three-fourths vote for a life sentence, even in cases of mandatory sentences. Thus, we now hold that a military court would be "compelled" by the Manual alone to require a three-fourths majority to sentence defendant to life imprisonment.

We note that our prior holding that the Manual has the force of law agrees with the holdings of the military courts themselves. As far back as 1951 the Court of Military Appeals held that "[f]or the purposes of this case we can and do hold that the act of Congress (the Code) and the act of the Executive (the Manual) are on the same level and that the ordinary rules of statutory construction apply." *United States v. Lucas,* 1 U.S.C.M.A. 19, 1 C.M.R. 19, 22 (1951). Subsequent military court cases have consistently upheld the Manual as having the force of law.

> Similar to its grant of authority to the Supreme Court to prescribe rules of practice and procedure in Federal civilian cases, which have the force of statutory law, the Congress, by Article 36 of the Code, supra, 10 USC § 836, granted to the President the parallel power to make such rules for the military courts.

*Levy v. Resor,* 17 U.S.C.M.A. 135, 37 C.M.R. 399, 403 (1967).

---

**4.** The 1984 Rules for Court Martial contain similar language. "A sentence which includes confinement for life or more than 10 years may be adjudged only if at least three-fourths of the members present vote for that sentence." Manual for Courts–Martial, United States, 1984,

R.C.M. 1006(d)(4)(B) at II–154. "When a mandatory minimum is prescribed under Article 118 the members shall vote on a sentence in accordance with this rule [R.C.M. 1006(d)]." *Id.* at R.C.M. 1006(d)(5) at II–154 (1984).

Article 36(a), UCMJ, 10 U.S.C. § 836(a), empowers the President to prescribe rules of procedure for cases before courts-martial. Pursuant thereto he has promulgated the Manual. His authority in that regard is limited only by the requirement that the rules be consistent with the Constitution or other laws.... A valid Manual provision, therefore, has the force and effect of law.

*United States v. Kelson,* 3 M.J. 139, 140–41 (C.M.A.1977).

The [Manual for Courts–Martial] was promulgated by the President of the United States in Executive Order 12473 pursuant to the authority vested in him by the U.S. Constitution and Article 36 of the UCMJ (10 U.S.C. § 836). Executive rules falling properly within the valid delegation of power by Congress have the force and effect of law.

*United States v. Daniels,* 20 M.J. 648, 649 (N.M.C.M.R.1985) (footnotes omitted). Again we point out that a Manual provision having the force and effect of law was binding on the military courts in this case.

The government claims that this issue is settled by our *Mendrano* opinion and the published opinions of every other court that has addressed this issue. We believe that the government misreads these cases. This is an area in which the majority of circuit cases are from this court. Although our cases clearly uphold the two-thirds requirement for convictions, our cases do not create any exception from the three-fourths requirement for sentencing.

In *Anderson* we first pointed out that the record indicated there was a three-fourths vote for both conviction and sentence. We then went on to state: "In a case [in which the charge is murder and the sentence is life imprisonment] it is sufficient if two-thirds or more of the members of the court concur in the conviction and three-fourths or more concur in the sentence." *Anderson,* 177 F.2d at 771. In another case we held: "[W]hen the charge is [rape] and the sentence life imprisonment it is sufficient if two-thirds or more concur in the conviction and three-fourths or more in the sentence." *McKinney v.*

*Warden,* 273 F.2d 643, 644 (10th Cir.1959), *cert. denied,* 363 U.S. 816, 80 S.Ct. 1253, 4 L.Ed.2d 1156 (1960). These cases at least imply support for the three-fourths vote requirement in mandatory sentence cases.

In the *Mendrano* case, relied on heavily by the government, we simply held that the two-thirds conviction rule did not violate due process. *Mendrano,* 797 F.2d at 1544–47. There is no discussion on mandatory sentences or the three-fourths voting requirement. Thus, *Mendrano* does not provide the basis for a holding that an exception exists to the three-fourths voting requirement for sentencing in cases carrying a mandatory sentence.

Two district court cases support our prior holdings. In *Brown v. Hiatt,* 81 F.Supp. 647 (N.D.Ga.1948), the court noted in dicta:

[W]hile the death penalty might have been imposed, it was not mandatory and ... therefore the vote of "three-fourths of all of the members present at the time the vote is taken" concurring was sufficient to support the sentence, although the finding of guilty was by a vote of two-thirds of the members present.

*Brown,* 81 F.Supp. at 650. Another district court noted:

The vote on conviction and the vote for the proper sentence for the offense of which the accused had been found guilty by the court are separate steps in the proceeding before the court-martial. A vote on a proper sentence for the offense is entirely distinct from a vote on the charges. There is no inconsistency in requiring a two-thirds vote for conviction and a three-fourths vote for sentencing.

*In re Campo,* 71 F.Supp. 543, 545 (S.D.N.Y.1947).

We acknowledge that dicta in two other non-binding cases could be construed to hold that no three-fourths vote on sentencing was required in mandatory sentence cases. *See Stout v. Hancock,* 146 F.2d 741 (4th Cir.1944); *Hurse v. Caffey,* 59 F.Supp. 363 (N.D.Tex.1945). However, the facts of these cases both include sentencing by at least a three-fourths vote. In addition, their holdings do not concern the three-fourths sentencing vote issue. Neverthe-

less, to the extent these cases stand for the proposition that no three-fourths vote is necessary on a mandatory life sentence, we simply disagree.

The only other circuit case to discuss this issue is *Stout v. Hancock*, 146 F.2d 741 (4th Cir.1944). The *Stout* case contains a facially troubling statement.

> [A]fter conviction has been voted in a prosecution for murder or rape, the only punishments permissible under the law are death and life imprisonment. The vote on punishment, therefore, is but a choice between these two; and, unless there is a unanimous vote in favor of the death penalty, life imprisonment necessarily follows.

*Stout*, 146 F.2d at 744. However, this statement is mere dicta. The holding in *Stout* was only that a unanimous vote for conviction is not required unless the death penalty is a mandatory punishment. *Id.* In fact, the *Stout* court went on to note the inconsistency of the statutes and the court's lack of power to fix the problem.

> Nor do we feel impelled to put a different interpretation upon article 43 because of the possibility that in voting punishment under article 92 the court-martial, while failing to vote unanimously for death, might fail to give a three-fourths vote for life imprisonment.... If there is any real difficulty in sentencing under that article, the matter is one which addresses itself to Congress and not to the courts.

*Id.* In addition, the *Stout* court stated that the conviction was "by more than two-thirds and sentence by three-fourths of the members of the court-martial, which is all that the law requires." *Id.* at 745. Therefore, although the *Stout* case contains some troubling language, we believe that the remaining language in the case and its underlying facts make it weak authority for the proposition that no three-fourths vote on sentencing is required in a mandatory sentence case.

A district court adopted the troubling language of the *Stout* court in a case the year after *Stout*. "[A]fter conviction has been voted in a prosecution for murder, the only punishment permissible under the law is death *or* imprisonment. The vote on imprisonment, therefore, is but a choice between those two; and unless there is an unanimous vote in favor of the death penalty, imprisonment necessarily follows." *Hurse v. Caffey*, 59 F.Supp. 363, 365 (N.D. Tex.1945) (emphasis in original). However, this statement is at least partially dicta since the facts of the case included a two-thirds vote for conviction—under an old statute allowing a two-thirds vote in cases involving mandatory death sentences—and later a unanimous vote for the death penalty. In addition, the holding of the case was simply that a two-thirds vote for conviction when the death penalty is imposed is proper under the old statute. We believe that *Hurse* is very weak authority for the proposition that no three-fourths vote on sentencing is necessary in cases involving mandatory sentences.

Although the military courts have been less clear, they also appear to have generally interpreted the statute to require a three-fourths vote on sentencing. For example, in a case holding that only a two-thirds majority must vote to convict for a crime involving a mandatory life sentence, the court quoted the troubling language of *Stout*, but also quoted the language supportive of our disposition of the case from *Campo*. *See United States v. Morphis*, 7 U.S.C.M.A. 748, 23 C.M.R. 212, 217 (1957).

In *United States v. Walker*, 7 U.S.C. M.A. 669, 23 C.M.R. 133 (1957), the court quoted the requirements for voting on guilt and sentence in the Code. The court then stated that "[t]hese provisions of the Code are plain and clear, and set out the number of votes required to convict and to sentence under different subsections. This is appropriate, for findings and sentence are separate functions...." *Id.* at 137. The *Walker* court then went on to quote the precise language of the Manual for Courts–Martial that states that even mandatory sentences must have the concurrence of the required number of court-martial members. *Id.* Although the holding in *Walker* was that only two-thirds were required to vote for conviction, the court certainly intimated

that three-fourths would be required to sentence, even on a mandatory sentence. In another case, the Court of Military Appeals actually questioned the propriety of a court-martial which did not require a three-fourths vote on a mandatory life sentence.

It is open to question whether the procedure followed at either hearing was proper. Long ago, this Court decided that the President, through the Manual, "may place an additional burden upon the ... [military judge] and the president of courts-martial not expressly imposed by the Code, but [which] ... is not prohibited by the Code." *United States v. Lucas*, 1 U.S.C.M.A. 19, 22, 1 C.M.R. 19, 22 (1951). It seems possible, though, that the voting requirement in paragraph 76b(2) of the 1969 Manual might on occasion conflict with the Code's mandatory life imprisonment for felony-murder— *e.g.*, if three-fourths of the members refused to vote for a sentence which included life imprisonment.

In any event, no issue in this connection was raised by defense on appeal, so we need not address this question any further.

*United States v. Garrett*, 24 M.J. 413, 419 (C.M.A.1987).

A recent Court of Military Appeals case contains some language that on its face might be interpreted to state a rule that no three-fourths vote is required to sentence in a mandatory sentence case. In *United States v. Shroeder*, 27 M.J. 87 (C.M.A. 1988), the court identified the first issue for review:

Whether the military judge erred by failing to instruct the members, as required by R.C.M. 1006(d)(5), that a sentence which includes confinement for life may only be adjudged if at least three-fourths of the members present vote for that sentence.

*Id.* at 88. The court then stated that it decided this issue against appellant. *Id.* However, in reality the court's formulation of the issue misstates the actual question before the court. On the same page as the formulation of the issues the court states that the military judge "further instructed [the court-martial members] that the sentence in its entirety had to receive the votes of three-fourths of the members—five out of six." *Id.* Since the military judge actually instructed the court-martial that a three-fourths vote was required, the court's formulation of the issue as asking whether the judge's failure to so instruct was in error is not a correct statement of the issue in the case. The actual issue before the court is identified by its holding. "[W]e think it was entirely appropriate for the military judge to instruct—as required by R.C.M. 1005(e)(1)—that, because Shroeder had been found guilty of felony murder, any sentence adjudged by the court members must include confinement for life." *Id.* at 90. The court was addressing whether the military judge could instruct the court-martial that their sentence must include life imprisonment, not whether the sentence must be supported by a three-fourths vote. In fact, the *Shroeder* court's opinion never questioned the military judge's instruction requiring the three-fourths vote. In addition, the court continually cited with approval its prior *Walker* opinion that at least impliedly supported the three-fourths vote. Therefore, we conclude that, although the military courts have not been entirely clear on this issue, they seem to support our interpretation of the current statutory structure requiring a three-fourths vote for a mandatory sentence.

Thus, we hold that a three-fourths vote is required on all sentences of life imprisonment, even if the sentence is mandatory. This holding is supported by the Manual for Courts–Martial. The Manual obviously contemplates just such a vote and provides for a remedy if three-fourths do not vote for a mandatory life sentence. After discussing the requirement that a concurrence of the required number of votes is required even for mandatory sentences, the Manual states: "If the required proportion of the court members are conscientiously unable to reach agreement on a sentence, this fact shall be announced in open session and a mistrial declared. The convening authority *may* thereafter direct a rehearing on the sentence before a different court." *Man-*

*ual for Courts–Martial, United States, 1969,* ¶ 76(b)(2) at 13–14 (Rev. ed. 1969) (emphasis added). We believe that the use of the word "may" indicates that the convening authority had discretion whether to order rehearing on the sentence. This means that the convening authority also had the discretion to order no punishment as the sentence. This implicit interpretation is made clear by the clarifying language of the current manual. "If the required number of members do not agree on a sentence after a reasonable effort to do so, a mistrial may be declared as to the sentence and the case shall be returned to the convening authority, who may order a rehearing on sentence only or order that a sentence of no punishment be imposed." *Manual for Courts–Martial, United States, 1984,* R.C.M. 1006(d)(6) at II–154 (1984). *See also United States v. Miller,* 10 U.S.C.M.A. 296, 27 C.M.R. 370 (1959).

The military judge in this case did not require a three-fourths vote on punishment. The judge gave the following instructions:

The voting on the part relating to confinement at hard labor for life or death will follow the following procedures:

When the Court has completed its discussion, the members shall vote first on the sentence of confinement at hard labor for life, that is, the less severe of the two punishments. The Court will vote by secret ballot as to the sentence of confinement at hard labor for life.... If the ballot results in one or more votes for a sentence to confinement at hard labor for life, then there will be no need to go forward and vote on a sentence of death, since a sentence of death requires a unanimous vote of the members. The logic is as follows:

If one person votes for confinement at hard labor for life, obviously, there cannot be a unanimous vote on death. So, if you have one or more votes for confinement at hard labor for life, then you need not go forward and vote for the sentence of death, that is, vote on the sentence of death. In other words, if the ballot has resulted in a sentence of confinement at hard labor for life, and if there is one or

more votes for sentence of confinement at hard labor for life—if the ballot results in no vote for a sentence of confinement at hard labor for life, then the members proceed to vote on a sentence of death. That is, if there are no votes for a sentence to confinement for life, then you can go on and consider the sentence of death and vote thereon.

Record, vol. 4, at 837–38. The judge's instructions did not require the court to reach a three-fourths majority vote in order to impose life imprisonment. We hold that these instructions do not fulfill the requirement of a three-fourths vote on a sentence of over ten years imprisonment contained in 10 U.S.C. § 852(b)(2) (1988).

█ In the context of this case, we hold that the court-martial's failure to follow the statutory requirements was a violation of defendant's right to due process. It is clear that military courts-martial are not held to the exact due process requirements created for civil courts. "[W]hat constitutes due process in a trial by a military tribunal is gauged by the principles of military law exacted by the Congress...." *De War v. Hunter,* 170 F.2d 993, 997 (10th Cir.1948), *cert. denied,* 337 U.S. 908, 69 S.Ct. 1048, 93 L.Ed. 1720 (1949) (citing *Reaves v. Ainsworth,* 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225 (1911); *French v. Weeks,* 259 U.S. 326, 42 S.Ct. 505, 66 L.Ed. 965 (1922)). Thus, the Supreme Court's cases striking down a unanimous jury of only five persons, *Ballew v. Georgia,* 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), and holding that a six-person jury must be unanimous, *Burch v. Louisiana,* 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979), are not applicable to military courts-martial. However, the lower due process rights accorded to military defendants are the *exception* to the general rules. As such, we hold the military courts to the specific statutory requirements created by Congress and the President as an exception to general due process jurisprudence. Because the military court failed to follow "the principles of military law enacted by Congress," *De War,* 170 F.2d at 997, we hold that defendant's due process rights were violat-

ed in this case. There can be no question that the congressional standard and the authorized regulations clearly mandated at the time of defendant's sentence the results we set out here. Therefore, we reverse the district court's holding on this issue and order the case remanded to the convening authority to either order rehearing on sentencing or to order no punishment entered consistent with the provisions of Rule for Court Martial 1006(d)(6) of the 1984 Manual for Courts–Martial.

### C. Equal Protection

Our resolution of the statutory interpretation issue makes it unnecessary to reach defendant's third argument concerning equal protection.

### D. Supreme Court Jury Voting Requirements

■ Finally, defendant argues that a vote of conviction from five out of seven members of a court-martial violates the Supreme Court's cases concerning jury voting requirements. This claim is controlled by our prior *Mendrano* opinion. We refuse to disturb our holding in *Mendrano* that a two-thirds vote for conviction by a military court-martial is constitutional. *See Mendrano*, 797 F.2d at 1542–47. We fully considered the Supreme Court's civilian jury cases in reaching our holding in *Mendrano*. We see no reason to reconsider the issue now.

### VI. Conclusion

We hold that the writ of habeas corpus should issue based on the court-martial's failure to require a three-fourths vote in favor of the life sentence imposed. Therefore, we REVERSE and REMAND the voting procedure issue to the district court for further proceedings consistent with this opinion. We AFFIRM the district court's refusal to review the three remaining claims under the petition for habeas corpus.

REVERSED and REMANDED in part; AFFIRMED in part.

STEPHEN H. ANDERSON, Circuit Judge, dissenting.

I respectfully disagree with the majority's treatment of court-martial voting procedures in imposing mandatory minimum life sentences. The majority opinion improperly extends the jurisdiction of this court in disregard for the independent military justice system established and supervised by Congress. The majority also misapprehends the limited nature of the review we are called upon to undertake in this case and seeks to announce and apply a new rule of constitutional procedure that is not within the relief we can properly provide on collateral review. Finally, in resolving the apparent conflict in the statutes relating to court-martial voting procedures the majority ignores Congress' recognized policy preference for efficient judicial resolution of criminal proceedings as interpreted by the military courts.

### I. JURISDICTION TO CONSIDER THE HABEAS PETITION

Just as the Constitution empowers Congress to establish lesser civil courts and to define the jurisdiction thereof, so "[t]he Framers expressly entrusted" to Congress the task of protecting the rights of men and women in the armed forces within the framework of discipline and duty demanded of the military. *Burns v. Wilson*, 346 U.S. 137, 140, 73 S.Ct. 1045, 1047, 97 L.Ed. 1508 (1953). "Military law ... is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment. [Civil courts exert] no supervisory power over the courts which enforce it...." *Id.* Congress has taken great care to provide a complete system of review within the military justice system. Just as its counterparts in the civil courts:

> As an independent tribunal, the Court of Military Appeals renders vital decisions on the constitutional rights of servicemembers and the prerogatives of commanders. It has demonstrated a willingness to strike down provisions of the Manual for Courts–Martial and departmental regulations, and to interpret provisions of the Uniform Code of Military

Justice in a manner that adds to or detracts from procedural requirements or regulations. It regularly applies decisions of the Supreme Court in resolving appellate issues.

H.R.Rep. No. 549, 98th Cong., 2d Sess. 16, *reprinted in* 1983 U.S.Code Cong. & Admin.News 2177, 2182. The military justice system affords military prisoners the opportunity for collateral, as well as direct review of their convictions by military courts. *See* Ct.Mil.Rev.R.Pract. & P. 20, *reprinted in* 10 U.S.C.A. foll. § 866. Congress now provides for direct review of military decisions by writ of certiorari to the United States Supreme Court. 10 U.S.C. § 867a.

The appellate decisions of military courts are "final and conclusive;" such decisions are "binding" upon all courts of the United States. 10 U.S.C. § 876. Although this provision does not entirely displace civil courts' jurisdiction over an application for a writ of habeas corpus from a military prisoner, *United States v. Augenblick,* 393 U.S. 348, 349–50, 89 S.Ct. 528, 529–30, 21 L.Ed.2d 537 (1969), "these provisions do mean that when a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civil court to grant the writ simply to reevaluate the evidence." *Burns,* 346 U.S. at 142, 73 S.Ct. at 1049.

Under the majority's approach, apart from considering four "helpful" factors in analyzing the scope of our jurisdiction on habeas, the federal courts would be left with "a large amount of discretion" to determine whether review is appropriate. *Supra,* at 1508. I believe this standard is too broad; the law in this circuit is not so imprecise:

> Federal civil courts have jurisdiction only over military habeas petitions which allege that petitioners have been imprisoned "as a result of proceedings which denied them basic rights guaranteed by the Constitution." *Id.* [*Burns v. Wilson,* 346 U.S. 137, 139, 73 S.Ct. 1045, 1047, 97 L.Ed. 1508 (1953).] We then review this issue only to determine "whether the military have given fair consideration" to petitioner's claim. *Id.* at 144, 73 S.Ct. at 1050. If such consideration has been given, we may only review the issue if it is both " 'substantial and largely free of factual questions.' "

*Lundy v. Zelez,* 908 F.2d 593, 594 (10th Cir.1990) (quoting *Burns,* 346 U.S. at 139, 73 S.Ct. at 1047; *Monk v. Zelez,* 901 F.2d 885, 888 (10th Cir.1990)).[1]

---

1. The majority of cases in this circuit have held that constitutional issues fully and fairly considered by the military court generally cannot be reviewed on habeas. *See, e.g., Mendrano v. Smith,* 797 F.2d 1538, 1542 n. 6 (10th Cir.1986) ("[T]his circuit has refused to review military courts' determinations of constitutional issues where the issues were fully and fairly litigated before the military tribunals."); *Watson v. McCotter,* 782 F.2d 143, 144 (10th Cir.), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986); *Wolff v. United States,* 737 F.2d 877, 879 (10th Cir.), *cert. denied,* 469 U.S. 1076, 105 S.Ct. 575, 83 L.Ed.2d 514 (1984); *Kehrli v. Sprinkle,* 524 F.2d 328, 331 (10th Cir.1975), *cert. denied,* 426 U.S. 947, 96 S.Ct. 3165, 49 L.Ed.2d 1183 (1976); *King v. Moseley,* 430 F.2d 732, 734 (10th Cir.1970); *McKinney v. Warden,* 273 F.2d 643 (10th Cir.1959), *cert. denied,* 363 U.S. 816, 80 S.Ct. 1253, 4 L.Ed.2d 1156 (1960); *Bennett v. Davis,* 267 F.2d 15, 17 (10th Cir.1959); *Dickenson v. Davis,* 245 F.2d 317, 320 (10th Cir.1957), *cert. denied,* 355 U.S. 918, 78 S.Ct. 349, 2 L.Ed.2d 278 (1958); *Easley v. Hunter,* 209 F.2d 483, 486–87 (10th Cir.1953). Other opinions have proceeded to review the merits of constitutional claims where no significant factual issues exist and no full consideration had been given to the claim by the military courts. *See Mendrano v. Smith,* 797 F.2d at 1542 n. 6 ("Here the record indicates that the military courts gave at least some consideration to petitioner's ... claims [but] the Government does not argue that full and fair consideration by the military courts makes judicial review inappropriate."). Likewise, where the claim asserted is viewed as "substantial," review is permitted even if already considered by the military courts. *See id.* ("[W]e will [review the claim] here, since the constitutional issues raised are substantial and largely free of factual questions...."); *Kennedy v. Commandant, U.S. Disc. Barracks,* 377 F.2d 339, 342–43 (10th Cir.1967) (reviewing claim stemming from denial of legally trained counsel).

Only two cases, *Wallis v. O'Kier,* 491 F.2d 1323, 1325 (10th Cir.), *cert. denied,* 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974); and *Day v. Davis,* 235 F.2d 379, 384 (10th Cir.), *cert. denied,* 352 U.S. 881, 77 S.Ct. 104, 1 L.Ed.2d 81 (1956), purported to reach the merits of a habeas petitioner's constitutional claims without explaining why jurisdiction was proper. In both cases, the court quickly and easily dismissed the claims as

As a threshold matter, Dodson's claim relating to the appropriate voting procedure in sentencing him to life imprisonment does allege a violation of his constitutional right to due process. But merely alleging a due process violation does not suffice to establish jurisdiction where the military courts have already fully and fairly considered the constitutional claim. In this case, Dodson briefed the issue of voting procedures before the military appellate courts, which rejected his argument after full and fair consideration; Dodson does not contend that the military review procedure was in any way lacking on this issue.[2]

Because Dodson raises a constitutional issue which was fully and fairly considered by the military courts, we have no jurisdiction to review his petition unless the issue is a "substantial" one. In a decision relied on heavily by the majority, the Fifth Circuit specifically cautioned: "We emphasize that only substantial constitutional questions should be cognizable in habeas corpus proceedings. As Judge Friendly has commented in a different context, 'Today it is the rare criminal appeal that does *not* involve a "constitutional" claim,' because there 'has been a vast expansion of the claims of error in criminal cases for which a resourceful lawyer can find a constitutional basis.'" *Calley v. Callaway,* 519 F.2d 184, 200 n. 23 (5th Cir.1975) (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U.Chi.L.Rev. 142, 156 (1970)), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976).

The majority cites as the only reason why Dodson's petition raises a substantial constitutional issue his claim that he "was incarcerated without due process of law." Judge Friendly's observation holds equally true of claims alleging a deprivation of due process in the criminal proceeding. To conclude that this issue is "substantial" simply because it raises due process concerns is to render meaningless any limitation on our habeas jurisdiction. Every claim asserting a deprivation of any constitutional right can easily be recast in terms of due process. Likewise, every infraction of procedural rules or misapplication of substantive law can be said to implicate due process; it requires no great skill or intelligence on the part of defense counsel to add those two words to what may be at best a marginal constitutional argument. As this case demonstrates, were we to regard every allegation of denial of due process as "substantial," we would quickly begin to exercise essentially supervisory control over every legal decision rendered by the military courts with which we may disagree. That result is certainly not in accordance with the elaborate framework established by Congress for an independent and self-contained military justice system.[3]

---

meritless. To the extent that the majority reads these cases to support the proposition that civil courts have unfettered discretion to review military habeas petitions involving any legal issue of constitutional law, I do not share that interpretation.

2. The majority views the exercise of habeas jurisdiction as an appropriate means of policing the military courts: "the military courts must give adequate consideration to the issues involved and apply proper legal standards." Thus, despite the fact that Dodson thoroughly briefed and argued this issue to both the United States Navy–Marine Corps Court of Military Review and the Military Court of Appeals, because both courts summarily rejected the argument without discussion the majority believes we have jurisdiction to review the correctness of those affirmances. That viewpoint is directly contrary to this circuit's existing precedent. *Watson v. McCotter,* 782 F.2d at 145 ("When an issue is briefed and argued before a military board of review, we have held that the military

tribunal has given the claim fair consideration, even though its opinion summarily disposed of the issue with the mere statement that it did not consider the issue meritorious or requiring discussion."). The fact that the military courts dealt with this issue in summary fashion rather than at great length does nothing to expand our jurisdiction over this habeas petition.

3. A constitutional claim is all that is necessary for a United States court to review a *state* court conviction on habeas. If there is any single legal concept applied and adopted uniformly in every case on this issue, it is that our review of military court decisions on habeas is *more limited* than our review of state proceedings. *E.g.,* Burns, 346 U.S. at 142, 73 S.Ct. at 1048; *Watson v. McCotter,* 782 F.2d at 145 n. 3. The military courts' determination of constitutional issues, unlike that of state courts, is entitled to deference. We defeat that deference by reviewing every military court decision relating to the constitution; therefore, only those constitution-

I do not view Dodson's claim as raising a "substantial" issue of constitutional law. As the majority concludes, Congress, in protecting the rights of armed services personnel, may constitutionally provide for a conviction by two-thirds of the court-martial members even where the sentence under law carries a minimum mandatory life term. It seems no great leap to conclude that Congress is equally empowered to provide for a life sentence in such circumstances without requiring concurrence by three-fourths of the members, and that such a scheme would pass constitutional scrutiny. Dodson's only real claim, as the majority views it, is not that a two-thirds sentencing vote is fundamentally unfair or otherwise inherently improper, but rather that Congress and the President have in fact prescribed a three-fourths vote on the sentence.

Significantly, Dodson makes no effort to demonstrate how, even if such a technical voting requirement exists for the imposition of a mandatory sentence, he was prejudiced by its violation. As to this troubling absence of any real prejudice to Dodson, the majority can only conjecture that there might be some theoretical possibility that the convening authority, having obtained a valid conviction for premeditated murder, might choose not to proceed with a rehearing on the sentence, the only legal outcome of which would be a life sentence identical

to the one Dodson has already received. Instead, the convening authority might simply let the conviction go unaccompanied by any punishment. Not only does such a fanciful scenario ignore the realities of law enforcement and the criminal justice system everywhere, it effectively duplicates the provisions for clemency and pardon already extant in the military justice system to which Dodson has full recourse.

Although a claim that a procedural safeguard exists and was violated may raise a question of constitutional magnitude, Dodson's assertion of a technical defect, the remedy of which would have absolutely no effect on his term of incarceration, does not justify this court's interjection of its own interpretation of Congress' intent; it is simply not a "substantial" constitutional issue.[4] I conclude that the issue Dodson raises does not render jurisdiction proper in this case, and I would dismiss the petition on that basis.

## II. LIMITATION OF REMEDY UNDER *TEAGUE V. LANE.*

Even if we have jurisdiction to consider his petition for relief, and assuming that his claim has merit, Dodson is not before us on direct appeal.[5] We must first determine, therefore, whether the relief sought would create a new rule of constitutional procedure under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[6]

---

al issues which are truly "substantial" are properly reviewable in civil courts.

**4.** The cases in this circuit which have dealt with "substantial" constitutional issues involved much more serious allegations of fundamental unfairness in the criminal proceeding than does Dodson's petition. For instance, in *Mendrano v. Smith*, 797 F.2d at 1542, the habeas petitioner claimed denial of his Sixth Amendment right to trial by jury in that he had been convicted by only two-thirds of a six-member court martial panel. In the civil context, the right to trial by jury is so fundamental and essential in criminal cases that it implicates the inherent fairness of the proceeding. Likewise, in *Kennedy v. Commandant*, 377 F.2d at 339, the petitioner alleged an effective denial of his Sixth Amendment right to counsel when he was refused a law-trained defense counsel. Such a deprivation, if true, would likely be viewed as a breach of a "watershed" constitutional right. By contrast, under the majority's analysis, Dodson's sentence

was not fundamentally unfair, but merely lacked procedural symmetry in the method of voting on conviction and the imposition of the minimum mandatory life term.

**5.** As I discuss below, I view Dodson's constitutional due process claim to be meritless. Even were I to accept the majority's analysis, however, the rule Dodson seeks and the one which the majority adopts would be barred under *Teague v. Lane.* Because *Teague* bars this court from even announcing a new rule on collateral review, I address the *Teague* issue prior to analyzing the constitutional standard which the majority announces. *See* 109 S.Ct. at 1069 ("Retroactivity is properly treated as a threshold question....").

**6.** Although *Teague v. Lane* involved collateral review of a state court decision, I believe that it applies equally to any collateral review of a final judgment, including a habeas petition from a military prisoner. The same considera-

"If so, we [may] neither announce nor apply the new rule [on collateral review] ... unless it falls into one of two narrow exceptions." *Saffle v. Parks,* — U.S. —, 110 S.Ct. 1257, 1259–60, 108 L.Ed.2d 415 (1990).

A "new rule" is one which "was not '*dictated* by precedent existing at the time the defendant's conviction became final.'" *Saffle,* 110 S.Ct. at 1260 (quoting *Teague,* 109 S.Ct. at 1070 (emphasis in original)). Because the underlying purpose for habeas review is to ensure compliance with constitutional requirements as they existed at the time of trial, the Supreme Court has recognized that " 'The "new rule" principle ... validates reasonable, good-faith interpretations of existing precedents ... even though they are shown to be contrary to later decisions.'" *Saffle,* 110 S.Ct. at 1260 (quoting *Butler v. McKellar,* — U.S. —, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990)). Where the relief sought does not involve any specific prior precedent, but rather seeks to extend the reasoning of prior case law, "our task is to determine whether a [military court] considering [Dodson's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution." *Saffle,* 110 S.Ct. at 1260.

I believe that the three-fourths voting requirement which the majority now establishes as a constitutional prerequisite in mandatory sentencing cases such as this is a new rule not compelled or dictated by any prior precedent. The majority cites no case which has reversed or vacated a mandatory life sentence on the basis of such a rule. Instead, it relies on dicta to the effect that a three-fourths concurrence in a mandatory life sentence *passes* constitutional muster as support for its conclusion that a less-than-three-fourths concurrence necessarily *fails* constitutional scrutiny. *See Anderson v. Hunter,* 177 F.2d 770, 771 (10th Cir.1949) ("[I]t is *sufficient* if two-thirds or more ... concur in the conviction and three-fourths or more concur in the sentence.") (emphasis added); *McKinney v. Warden,* 273 F.2d 643, 644 (10th Cir.1959) (identical language), *cert. denied,* 363 U.S. 816, 80 S.Ct. 1253, 4 L.Ed.2d 1156 (1960).[7] These cases do not dictate or compel the result reached by the majority; just because one ratio is sufficient does not mean that a lesser ratio is not.

The majority opinion "acknowledge[s] that dicta in two other non-binding cases could be construed to hold that no three-fourths vote on sentencing was required in mandatory sentence cases." *Supra,* at 1258. Indeed, the language of *Stout v. Hancock,* 146 F.2d 741 (4th Cir.1944), *cert. denied,* 325 U.S. 850, 65 S.Ct. 1086, 89 L.Ed. 1971 (1945), appears to reject any constitutional requirement for three-fourths concurrence in a mandatory life sentence.

[A]fter conviction has been voted in a prosecution for murder or rape, the only punishments permissible under the law

---

tions of comity and finality cited by the Court in *Teague* are equally important in cases involving military courts-martial. In defining a "new rule," the *Teague* Court specifically stated that "a case announces a new rule when it breaks new ground or imposes a new obligation on the States *or the Federal Government.*" 109 S.Ct. at 1070 (emphasis added). *Accord, United States v. Ayala,* 894 F.2d 425, 429 n. 8 (D.C.Cir.1990) ("To be sure, not *all* postjudgment changes in law may be raised in a [federal prisoner's] section 2255 proceeding.") (citing *Teague v. Lane* ); *Callanan v. United States,* 881 F.2d 229, 232 n. 1 (6th Cir.1989) (limiting the holding in *Teague* to new constitutional rules of procedure, implying that *Teague* otherwise applies to federal prisoners' petitions for collateral review), *cert. denied,* — U.S. —, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990).

7. In a general discussion of court-martial procedure, one prior opinion cites the general statutory provision that "no person may be sentenced to life imprisonment or confinement for more than ten years except with the concurrence of three-fourths of the members present when the vote is taken." *Mendrano v. Smith,* 797 F.2d 1538, 1541 & n. 3 (10th Cir.1986) (citing 10 U.S.C. § 852(b)(1) and (2)). As the majority acknowledges, the issue in *Mendrano* did not involve the voting requirements relating to the sentence after conviction, nor did the court discuss the effect of a mandatory minimum life sentence on the general sentencing requirement of section 852(b). Although very broad language in *Mendrano* might suggest a minimum voting concurrence in the sentence, nothing therein compels such a requirement.

are death and life imprisonment. The vote on punishment, therefore, is but a choice between these two; and, unless there is a unanimous vote in favor of the death penalty, life imprisonment *necessarily follows.*

146 F.2d at 744 (emphasis added);[8] *see also O'Callahan v. Parker,* 395 U.S. 258, 263, 89 S.Ct. 1683, 1685, 23 L.Ed.2d 291 (1969) ("A court-martial is tried, not by a jury of the defendant's peers which must decide unanimously, but by a panel of officers empowered to act by a two-thirds vote."), *overruled on other grounds, Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987); *Brown v. Hunter,* 172 F.2d 487, 489 (10th Cir.) ("The mandatory provisions . . . imposed a compulsory duty upon the board to sentence petitioner to death or life imprisonment upon a finding of guilt. It had no alternative but to comply with the legislative direction."), *cert. denied,* 336 U.S. 969, 69 S.Ct. 940, 93 L.Ed. 1120 (1949).

The statutory provisions relating to courts-martial generally do not compel any rule establishing a minimum concurrence in a mandatory life sentence. The statutory provision prescribing a minimum life sentence can easily be read as obviating the need for any fixed number of concurrences where the death penalty is not imposed. Indeed, the majority opines: "The government's [position] that a three-fourths vote for a mandatory sentence is unnecessary appears logical at first glance." Thus the Court of Military Appeals, writing in 1987, after Dodson's conviction had become final, noted that "It is open to question whether the procedure followed . . . was proper. . . . It seems possible . . . that the voting requirement in paragraph 76(b) of the 1969 Manual might on occasion conflict with the Code's mandatory life imprisonment for felony-murder—*e.g.,* if three-fourths of the members refused to vote for a sentence which included life imprisonment." *United States v. Garrett,* 24 M.J. 413, 419 (C.M.A.

1987). Even if the majority's resolution of the apparent ambiguity in the statutes is correct, its reasoning is not so apparent as to compel that result. The constitutional voting requirement is a new rule which the majority seeks to announce and apply in this habeas proceeding.

Finally, the majority's heavy reliance on the voting procedure enumerated in the Manual for Courts–Martial is no answer to the "new rule" analysis of *Teague.* Within the broad limits of the constitution itself, the specific requirements of due process in military tribunals are established and defined by Congress. The interstitial rules of procedure established by the Executive are void insofar as they conflict with such duly enacted legislation. *See United States v. Garrett,* 24 M.J. 413, 419 (C.M.A.1987) ("Long ago, this Court decided that the President, through the Manual, 'may place an additional burden upon the . . . [military judge] and the president of courts-martial not expressly imposed by the Code, but [which] . . . is not prohibited by the Code.'") (quoting *United States v. Lucas,* 1 U.S.C.M.A. 19, 22, 1 C.M.R. 19, 22 (1951)). Depending on the resolution of the apparent conflict between the statutes involved, the provision of the Manual requiring a minimum concurrence in mandatory sentences may or may not conflict with the statutory scheme. Although the majority concludes that the minimum concurrence provision does not conflict with the statutory requirement of a mandatory life sentence, nothing compels that result. As I discuss below, the statutes can easily be read as limiting the discretion of the court-martial panel in imposing a prescribed sentence so that the provision of the Manual conflicts with the legislative scheme and is void. *See* W. Winthrop, *Military Law and Precedents* 390 (2d ed. 1920) (Where Congress has mandated a sentence, "the office of the court simply is to cause the legal sentence to be entered of record by the judge advocate, no discretion being allowed

---

8. The majority "simply disagree[s]" with the holding of *Stout* insofar as it may be read to permit less than a three-fourths concurrence in the sentence. It is difficult to understand, if the majority's rule actually conflicts with existing case law from our sister circuit, how it could be promulgating anything *but* a new rule. *Cf. Saffle,* 110 S.Ct. at 1260 ("The explicit overruling of an earlier holding no doubt creates a new rule. . . .").

and no deliberation or vote being called for."). I am not the first to reach such a conclusion. *United States v. Garrett*, 24 M.J. 413, 419 (C.M.A.1987) ("the voting requirement in [the] Manual might on occasion conflict with the Code's mandatory life imprisonment....").

The majority's reliance on the provision of the Manual as compelling the conclusion that a minimum concurrence is required in mandatory sentencing cases is an exercise in circular reasoning. The majority resolves the question of whether the voting requirement in the Manual is invalid under the mandatory sentencing scheme by citing the voting requirement in the Manual. In the context of "new rule" analysis under *Teague*, the Manual's provision compels, in the majority's view, the conclusion that the Manual's provision is valid. Not only does the majority place the regulatory cart before the ox of statutory interpretation, but by virtue of the novel positioning it concludes that it *must* be so arranged.

When Congress prescribed a mandatory life sentence for military personnel convicted of premeditated murder who are not sentenced to death, it is perfectly reasonable to conclude that it meant what it said. No provision of the Manual could alter such a congressional mandate, much less bind a reviewing court to conclude that the statute means something else entirely. The majority's conclusion otherwise is unsupportable.

Having concluded that the three-fourths sentencing requirement constitutes a "new rule" for purposes of *Teague*, I would not apply the rule under either of the two narrow exceptions. The first exception, relating to rules which place a class of private conduct beyond the power of the State to proscribe, is inapplicable. The second exception, involving " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding," does not encompass a rule

such as the voting requirement adopted by the majority. *Saffle*, 110 S.Ct. at 1263 (quoting *Teague*, 109 S.Ct. at 1075).

The Supreme Court has rejected the contention that a rule which merely "preserve[s] the accuracy and fairness of ... sentencing judgments" qualifies under the second *Teague* exception. Rather, such a rule "must not only improve accuracy, but also 'alter our understanding of the *bedrock procedural elements*' essential to the fairness of a proceeding." *Sawyer v. Smith*, —— U.S. ——, ——, 110 S.Ct. 2822, 2833, 111 L.Ed.2d 193 (1990) (quoting *Teague*, 489 U.S. at 311, 109 S.Ct. at 1075) (emphasis in original)). Given the extremely narrow scope of this second exception, I cannot conclude that the majority's three-fourths voting requirement is "an 'absolute prerequisite to fundamental fairness' " so as to qualify as an exception to *Teague*.[9] *Sawyer*, —— U.S. at ——, 110 S.Ct. at 2832. I would therefore dismiss Dodson's petition as requesting relief which we are powerless to grant on collateral review.

## III. STATUTORY VOTING SCHEME IN COURTS–MARTIAL

Alternatively, assuming that we have jurisdiction to consider the petition and that the relief requested is not barred on collateral review, I would deny the petition as meritless. Article 118 of the Uniform Code of Military Justice provides that any person who is found guilty of premeditated murder "shall suffer death or imprisonment for life as a court-martial may direct." 10 U.S.C. § 918. An apparent ambiguity exists, however, because the Code permits conviction upon a concurrence of two-thirds of the court-martial members, *id.* § 852(a)(2), but generally requires agreement by three-fourths of the members in imposing a life sentence. *Id.* § 852(b)(2). Logically, where a bare two-thirds have convicted, concurrence by three-fourths in a life sentence may not always be forth-

---

9. Nor do I read the majority opinion to adopt such a view. Nowhere does the majority suggest that the requirement of a three-fourths voting concurrence in a mandatory life sentence is so fundamental that even absent any apparent conflict in the statutory scheme such a rule

must be applied. I find it impossible to conclude that a three-fourths vote on the life sentence is "fundamental" to fairness given the majority's view that a two-thirds vote of conviction suffices even under a mandatory minimum life sentence scheme.

coming; nevertheless, a lesser sentence is not within the court-martial's power to impose. In such a case, the majority concludes that a convicted murderer should undergo successive and repetitive sentencing hearings before different panels until eventually one court agrees in the life sentence by at least a three-fourths majority. Alternatively, the majority reasons that the convening authority may choose not to proceed, whereupon no sentence is imposed and the statute's requirement for a mandatory minimum life sentence is effectively ignored. I do not believe that Congress intended such an illogical and inefficient process once the defendant has been duly convicted.

The majority violates a fundamental rule of statutory interpretation. Dodson's petition does not state a constitutional claim if the statute does not require three-fourths concurrence in a life sentence in cases where a minimum mandatory life term is prescribed by law. The facially troubling statute, section 852(b)(2), does not specifically apply to mandatory sentences; [10] rather, the majority interprets the voting language broadly as encompassing all sen-

tences, mandatory or otherwise. This interpretation ignores the basic rule:

> It is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question.

*Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 2241, 104 L.Ed.2d 923 (1989) (citing *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 841, 106 S.Ct. 3245, 3251, 92 L.Ed.2d 675 (1986); *United States v. Rumely,* 345 U.S. 41, 45, 73 S.Ct. 543, 545, 97 L.Ed. 770 (1953); *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932)). Thus I would interpret section 852(b)(2), requiring a three-fourths concurrence in a life sentence, so as to limit its application to imposition of discretionary life sentences; no such concurrence is necessary where the life term is prescribed by law.[11]

The need for informality and expediency in the military court-martial requires that it remain relatively free of procedural inefficiency. Thus we have recognized "that in the military context [there is an] obvious policy preference by Congress for lessening the hung-jury problem in courts-mar-

---

10. I recognize that the otherwise unambiguous language of a statute is generally conclusive. *In re Roberts,* 906 F.2d 1440, 1442 (10th Cir.1990) (citing *Miller v. Commissioner,* 836 F.2d 1274, 1283 (10th Cir.1988)). Here however, the relevant statutes read together cannot be reconciled without interpreting either the provision for mandatory life sentence upon conviction by two-thirds vote or the general voting scheme requiring a three-fourths concurrence in a life sentence.

11. Military authorities have recognized that the court martial panel generally has discretion to impose any sentence within an acceptable range dictated by Congress. *See* D. Schlueter, *Military Criminal Justice,* § 15–17 (2d ed. 1987). Historically, however, military law has taken a very different view of the court-martial's role in imposing a mandatory sentence. Where Congress has mandated a sentence, "the office of the court simply is to cause the legal sentence to be entered of record by the judge advocate, no discretion being allowed and no deliberation or vote being called for." W. Winthrop, *Military Law and Precedents* 390 (2d ed. 1920). A vote is required only where "the sentence is left by the Code to the discretion of the court...." *Id.* As early as 1863 William DeHart observed:

> In cases not within the discretion of the court to affix the punishment, it inevitably follows that the punishment is in accordance with the law, and the finding of the court, and cannot be modified by any individual opinion of a member.... The oath which every member takes, requires and obliges him to "administer justice according to the articles of war," and of course, it follows, that upon conviction of a prisoner for a particular offense, every member must vote the punishment which the law has prescribed. Such cases do not admit of an appeal to the conscience for the solution of any doubts which may exist, for where the law has prescribed a rule, no doubt can be entertained.

W.C. DeHart, *Observations on Military Law,* 189–90 (1863); *see also id.* at 191–92 (discussing duty of every panel member, upon failure to agree on death penalty to vote for imposition of some legal sentence). Thus the vote on mandatory life imprisonment where the court fails to agree unanimously on the death penalty pursuant to 10 U.S.C. § 852(a) is largely ceremonial, and does not require due process safeguards which must ordinarily accompany the exercise of sentencing discretion.

tial...." *Mendrano v. Smith*, 797 F.2d 1538, 1547 (10th Cir.1986). The majority's solution to the apparent ambiguity in the statutory voting scheme does little to further the underlying goal of efficiency in the military justice system. *See Curry v. Secretary of the Army*, 595 F.2d 873, 877 (D.C.Cir.1979) ("[T]he fundamental function of the armed forces is 'to fight or be ready to fight wars.'") (quoting *Toth v. Quarles*, 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955)). Such a succession of duplicative sentencing hearings defeats the military's primary purpose:

> [T]rial of soldiers to maintain discipline is merely incidental to an army's primary fighting function. To the extent that those responsible for performance of this primary function are diverted from it by the necessity of trying cases, the basic fighting purpose of armies is not served.

*Toth v. Quarles*, 350 U.S. at 17, 76 S.Ct. at 5.

Likewise, the majority's approach ignores the "balance" which Congress has already drawn between the military's primary objective and the rights of service personnel. By requiring no more than a two-thirds concurrence in the conviction, and by providing for acquittal upon failure to convict, Congress has already provided the appropriate balance. *See Mendrano*, 797 F.2d at 1546 (discussing the two-thirds conviction-or-acquittal rule, concluding that "This balancing does not seem constitutionally impermissible"). The majority's plan effectively raises the number of votes necessary for conviction and punishment to three-fourths; failure to sentence by a three-fourths vote results in a sort of "mistrial," with either no punishment or a new hearing to follow.

The majority opinion affords no deference to the considered judgment of the military courts in interpreting the statutory provision in question, despite the fact that we exercise no supervisory power over those courts. In *United States v. Shroeder*, 27 M.J. 87 (C.M.A.1988), *cert. denied*, 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989), the Court of Military Appeals framed the issue thus:

> WHETHER THE MILITARY JUDGE ERRED BY FAILING TO INSTRUCT THE MEMBERS, AS REQUIRED BY R.C.M. 1006(d)(5), THAT A SENTENCE WHICH INCLUDES CONFINEMENT FOR LIFE MAY ONLY BE ADJUDGED IF AT LEAST THREE-FOURTHS OF THE MEMBERS PRESENT VOTE FOR THAT SENTENCE.

The court's decision: "We decide [the] issue against appellant." 27 M.J. at 88. The court was very specific: "Likewise, we conclude that the requirement in Article 52(b)(2) that there must be a three-fourths vote of the members in favor of a sentence 'to life imprisonment or to confinement for more than ten years' *was not intended to negate the mandatory minimum confinement for life* prescribed by Article 118...." *Id.* at 89 (emphasis added). The *Shroeder* court anticipatorily rejected the majority's approach of conducting additional sentencing hearings:

> If, as here, the military judge instructs the court members that they must adjudge a minimum sentence of life imprisonment, as prescribed by Article 118, the need is greatly reduced for utilizing a rehearing on sentence or a reconsideration of sentence as a means to impose the mandatory sentence which Congress prescribed. While these means are available to effectuate the requirements of Article 118, we have no doubt that Congress preferred that the mandatory sentence be adjudged initially—rather than for an illegal sentence to be adjudged and then corrected by a rehearing or reconsideration.

*Id.* Finally, the court acknowledged that under the statute, "Admittedly, since the court members must vote on the sentence, they can engage in 'jury nullification' and can adjudge a sentence of less than the minimum confinement prescribed by the Code. Of course, such action—which the military judge's instruction was intended to forestall—would be irresponsible *as well as unlawful* and certainly should not be en-

couraged." *Id.* at 90 (emphasis added).[12]

The majority primarily relies on the 1969 Manual for Courts–Martial, in effect at the time of Dodson's conviction, as supporting its view. Given the specificity of the *Shroeder* court's holding, I conclude that the Court of Military Appeals was correct in surmising that "the voting requirement in paragraph 76b(2) of the 1969 Manual might on occasion conflict with the Code's mandatory life imprisonment. . . ." *United States v. Garrett,* 24 M.J. 413, 419 (C.M.A. 1987). Accordingly, because the provision of the Manual conflicts with the statutory minimum life sentence in cases of premeditated murder, I conclude that the statutory provision, not the Manual, should be enforced.

I find no support for the majority's conclusion that Congress intended a three-fourths concurrence in a mandatory minimum life sentence. Indeed, I consider the judgment of the Court of Military Appeals to the contrary to settle the issue. It is not the place of this court to supervise or correct erroneous statutory interpretations by military courts relating to the operation of the military justice system. *E.g., Burns v. Wilson,* 346 U.S. 137, 140, 73 S.Ct. 1045, 1047, 97 L.Ed. 1508 (1953); 10 U.S.C. § 876. I would therefore defer to the military courts' interpretation of the statutory scheme as it has been applied in this and other cases.

## CONCLUSION

I would affirm the district court's refusal to grant habeas relief on the basis that we lack jurisdiction to review the petition, and that the petition requests relief which is barred on collateral review. Alternatively, I would conclude that the voting procedure followed by the court-martial in imposing sentence complied with the express statutory requirements. For the reasons stated, I respectfully dissent.

12. The majority cites the *Shroeder* decision, but asserts: "However the [Shroeder] court's formulation of the issue misstates the actual question before the court. . . . The court was addressing whether the military judge could instruct the court-martial that their sentence must include life imprisonment, not whether the sentence must be supported by a three-fourths vote." The majority apparently would find comfort in a three-fourths concurrence that results from an instruction to the panel members that they must reach this result. I am unable to find the distinction between a ceremonial vote, the outcome of which is mandated by the court prior to deliberations, and no vote at all. The voting procedure used by the military judge in Dodson's sentencing was simply an effective means of taking the sentencing discretion away from the panel members insofar as the term of imprisonment was concerned—the same effect achieved by the approved instruction in *Shroeder.*